STANLEY McISAAC'S CASE.

Suffolk.    December 5, 1928. — January 24, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Workmen's Compensation Act,* Injuries to which act applies, Proximate
cause.  *Proximate Cause.*

A finding by the Industrial Accident Board, that an employee suffered
an injury arising out of and in the course of his employment, and a
decree by the Superior Court awarding compensation, were warranted
on evidence that the employee, while lifting heavy cases, "felt some-
thing snap in his chest; he walked about three feet and fell down . . . .
He was not rendered unconscious"; and thereafter for several months
he had fainting spells and fell down, was unable to go around by him-
self because of such tendency, and unable to work; that he had had
such fainting spells previous to the accident; that he was suffering
from psychasthenia, a highly nervous condition due to worry or
fright; that he suffered from fear of fainting or collapse; and that
the attacks of fainting and falling were connected with the accident
by the mental attitude resulting therefrom which caused fear.

CERTIFICATION to the Superior Court under the provisions
of the workmen's compensation act of a decision by the
Industrial Accident Board awarding compensation to the
claimant.  The case was heard by a single member of the
board on October 31, 1927, January 25 and January 30, 1928.

In the Superior Court, a decree was entered in accordance
with the decision by the board by order of *Cox,* J.  The
insurer appealed.  Material evidence is stated in the opinion.

The case was submitted on briefs.

*G. Gleason,* for the insurer.

*W. B. Sullivan, Jr.,* for the claimant.

CROSBY, J.  This is an appeal from a decree affirming a
decision by the Industrial Accident Board and ordering the
insurer to pay the employee compensation under the work-
men's compensation act.

The case was first heard by a board member who was un-
able to find that the employee received an injury arising out
of and in the course of the employment, and dismissed the

claim for compensation. Thereafter the Industrial Accident Board referred the case back to the same member for the purpose of hearing further evidence; the member then found that the employee received a personal injury arising out of and in the course of his employment on May 6, 1927, as a result of which, and causally connected therewith, the employee has been totally incapacitated for work from a condition of psychasthenia, this condition being "due to worry and apprehension which have their exciting cause in the injury." The reviewing board, upon all the evidence, adopted and affirmed the findings and decision of the single member, and in accordance therewith a decree was entered in the Superior Court.

The employee testified that he was employed as a helper on a truck; that on May 6, 1927, he was carrying two cases of beer into a store, and was about to put them down when he was told to carry them into the back room; that at that time he held the cases about three inches from the floor, and then raised them "with a quick jerk, and felt something snap in his chest; he walked about three feet and fell down . . . . He was not rendered unconscious." He further testified, and there was other evidence to the same effect, that since the time above referred to he has had fainting spells and has fallen down but has not become unconscious; that he has at these times a peculiar feeling around his chest; that he cannot go about by himself because he falls; that he has not done any work since the tenth of May following the accident. There was evidence that while at the Massachusetts General Hospital for examination, and also on two other occasions when being examined by different physicians, he had these attacks.

The only evidence before the board member which tended to show that the employee's condition was due to what occurred when he delivered the cases of beer was the testimony of Dr. Lane. At the first hearing it was shown by his report that he saw the employee in one of these seizures, and that "He appears to be dominated by fear of losing his balance and he is in constant fear of attacks"; that the employee states he is not unconscious during the attacks, and he did

not appear to be unconscious during the attack while in the doctor's presence.  At the second hearing this witness was asked whether, in his opinion, "these spells" would be due to the snapping of something in his system while he was carrying the box, and answered that indirectly they would, "not as a physical injury"; that in his opinion the condition in which he found the employee is a state of great fear, what he calls psychasthenia, a highly nervous condition due to worry, apprehension, fright or anything which would bring about a state of anxiety and fear; that he did not understand the employee had an attack when he fell on May 6, but that he had an ordinary fall with a tear of muscles which frightened him afterwards; that "these cases" do not develop at the time of the accident; "that there is a period of meditation anywhere from twenty-four to seventy-two hours after the accident before nervous symptoms come on"; that "These cases have happened with great big strong husky men and frail men"; that the employee's principal fear is one of fainting or collapse; that he did not regard the condition as epilepsy; that the employee will undoubtedly recover, but that he is not at present able to work; that the employee told him that he had fainting spells when sixteen years old and when in public places he would be unconscious; that the attacks come on the employee when he fears that he is going to fall, that he has a sudden feeling of falling; that "Any emotional disturbance would bring on an attack.  It does not mean that there would be a new emotional disturbance to bring on each subsequent attack.  The memory — 'anything that reminds them of that thing,' any infirmity, weakness or exhaustion will bring on an attack"; that "If he did have sharp pain when he lifted the beer case, it is not that pain or any physical damage that was then done which has caused any of the attacks"; that in the witness' opinion "if there is a relation, it is because there came into his mind a fear which associates itself back to that or some other accident . . . . In . . . [his] experience . . . [he has] seen this thing in similar cases."  He was then asked "if he would agree or disagree with the following statement [which was in the report of the impartial physician appointed by the board]: 'I do not see

how such a condition can be related in any way to the accident which he describes, and in fact, I do not believe it is related to the accident. That the attacks occurred after the so called accident, is, I believe, merely a coincidence,'" and he answered "that he did not look at it or see it in that way"; that he connected these attacks with the accident by the mental attitude or thought which the employee has and which brings on fear. The board member accepted the opinion of Dr. Lane and upon it and all the evidence found that the injury arose out of and in the course of the employment.

Upon the entire evidence and the reasonable inferences which might be drawn therefrom we cannot say as matter of law that the employee since the injury has not suffered from psychasthenia or that a causal relation between the injury and the employee's subsequent condition has not been proved. *Sinclair's Case*, 248 Mass. 414. See *Diaz's Case*, 217 Mass. 36.

The case at bar is distinguishable from *Daniels* v. *New York, New Haven & Hartford Railroad*, 183 Mass. 393, *Sponatski's Case*, 220 Mass. 526, *Upham's Case*, 245 Mass. 31, and other cases cited by the insurer.

*Decree affirmed.*