TEACHERS' RETIREMENT BOARD *vs.* CONTRIBUTORY RETIREMENT APPEAL BOARD & another.

Suffolk. December 2, 1963. — January 10, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Retirement. Death. Proximate Cause. Evidence,* Opinion: expert.

A school teacher who, without any instructions from a superior, entered a burning school building in order to obtain his students' corrected examination papers, was acting "in the performance of . . . his duties at some definite place and at some definite time" within G. L. c. 32, § 9 (1). [665–666]

The facts that a school teacher apparently "was in perfect health" until he entered a burning school building in order to obtain his students' corrected examination papers and that he remained there from fifteen to twenty minutes, left there very excited and upset, and, in the five day period between the fire and his death from acute coronary thrombosis, was worried, "did not feel good," complained of indigestion, chest pains

and shortness of breath, and "wasn't sleeping right," together with expert medical testimony that he died as the natural and proximate result of his experience in the burning building and that there was a "direct relationship" between that experience and "the onset of his symptoms . . . and his death," supported a conclusion that his death was a proximate result of a duty-connected personal injury within G. L. c. 32, § 9 (1). [666–667]

PETITION for review filed in the Superior Court on June 13, 1961.

Mary C. Nolan was allowed to intervene. The case was heard by *Chmielinski, J.*

*William J. Wallace,* Special Assistant Attorney General, for the petitioner.

*Paul F. X. Powers,* Assistant Attorney General, for the respondent.

*Andrew F. McCarthy* for the intervener.

WHITTEMORE, J. This appeal in a proceeding for review under the State Administrative Procedure Act (G. L. c. 30A, §§ 14, 15) is taken by the Teachers' Retirement Board (Retirement Board) from a final decree of the Superior Court. That decree affirmed a decision of the Contributory Retirement Appeal Board (Appeal Board) which, under G. L. c. 32, § 16 (4), reversed a decision of the Retirement Board and directed it to pay accidental death benefits to Mary C. Nolan, the intervener, under G. L. c. 32, § 9 (1).

Mrs. Nolan's application to the Retirement Board for accidental death benefits was based on the death of her husband, Francis T. Nolan, on February 11, 1958.

At the hearing before the Appeal Board the parties agreed to facts in part as follows: the deceased (Nolan) had been a teacher in the Clinton High School. On February 6, 1958, the school building was destroyed by fire. Nolan was given permission by a police officer "to enter the burning building in order to obtain his mid-year examinations which had already been corrected." Nolan was in the building from fifteen to twenty minutes and when he returned he appeared very excited and upset. In the period after the fire he was worried about where classes would be held and that his pay checks might not continue. He can-

celled appointments on February 8, because "he did not feel good." Nolan sat up until 1:45 A.M. February 11, discussing with his wife what would happen at a meeting called on that day to make arrangements to continue the school program. Nolan attended the meeting of teachers and school officials on Tuesday, February 11, 1958, and seven minutes thereafter died of an acute coronary thrombosis. Nolan "was in perfect health up until the time of the fire." Mrs. Nolan testified that Nolan had been in perfect physical health up to the time of the fire, that in the period after the fire he complained of indigestion, chest pains and shortness of breath; "he wasn't sleeping right." Some other facts were agreed to or put in evidence as to the extent of Nolan's excitement following the fire, but they were not included in the hypothetical question to the medical expert.

A physician, who the Retirement Board agreed was qualified, testified on the basis of the substance of the foregoing facts that Nolan's death was the natural and proximate result of the experience in the burning building and that there was a "direct relationship between his experience in the burning building and the onset of his symptoms as a result of that and his death." There was no significant cross-examination.

The Appeal Board found that the deceased "did suffer an injury in the course of his employment, which injury was the cause of his death within the meaning of the statute." The judge in the Superior Court ruled that Nolan suffered an injury "in the course of his employment and in the course of his duties as a teacher . . . and died as the natural and proximate result."

General Laws c. 32, § 9 (1), authorized payments to the beneficiaries "[i]f the board . . . finds that . . . [the] member . . . died as the natural and proximate result of a personal injury sustained or a hazard undergone as a result of, and while in the performance of, his duties at some definite place and at some definite time . . . ."

The Retirement Board's contentions do not show error.

1. The facts show that Nolan's action in entering the

burning building to get the corrected examination papers was in the course of his duties and the contrary could not reasonably have been found.   Nolan's professional obligations included reasonable steps to preserve and give his students the benefit of tests of their achievements.   It is inconsequential that no superior had instructed Nolan in respect of his action, specifically or generally.

In the circumstances it makes no difference that the Appeal Board found injury in the course of his employment rather than "injury . . . as a result of, and while in the performance of, his duties."   Compare *Boston Retirement Bd.* v. *Contributory Retirement Appeal Bd.* 340 Mass. 109; *Boston Retirement Bd.* v. *Contributory Retirement Appeal Bd.* 340 Mass. 112.

2.   The medical opinion was based on more than conjecture.   There was no evidence of what Nolan experienced in the building.   But we think the physician was not conjecturing an extraordinary occurrence.   True, as the Retirement Board points out, if excitement of the fire was the cause of the heart attack, this excitement was not necessarily dependent upon Nolan entering the burning building. Nevertheless, on the evidence, that action was not without significance.   The physician assigned it as a cause.   We cannot rule this error of law.   We assume, as statements of certain physicians to the Retirement Board had suggested, that it is by no means the universal medical opinion that there is a necessary relationship between exertion or emotional excitement and a following thrombosis.[1]   This, however, is a matter for those who are learned in the field and no issue in respect of it is presented on this record.   In the absence of cross-examination we must assume that the physician was postulating, notwithstanding Nolan's apparent good health, a heart and circulatory system in such a state that sudden excitement led to internal changes, outwardly manifested by the symptoms described, and that these changes led to the thrombosis.   See, for a statement

---

[1] See *State Bd. of Retirement* v. *Contributory Retirement Appeal Bd.* 342 Mass. 58, 65, fn. 1.

of such a theory, the testimony set out in *Mullen* v. *Contributory Retirement Appeal Bd.* 343 Mass. 641, 642. A majority of the court are of the opinion that we cannot rule that it is plainly unsound to accept the theory and accordingly to ascribe the close exposure to the fire as a cause of the manifested internal changes and the resulting thrombosis and death.

*Decree affirmed.*