VINCENT P. FITZGIBBONS's (dependent's) CASE.

Suffolk. November 9, 1977. — March 15, 1978.

Present: BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Workmen's Compensation Act,* Injuries to which act applies, Emotional distress. *Words,* "Personal injury."

Evidence in a workmen's compensation case, including the opinion of a psychiatrist called as an expert on behalf of the claimant, supported a finding of the Industrial Accident Board that there was a causal connection between a work related injury and the employee's subsequent suicide despite testimony to the contrary by another expert. [635-637]

An employee who suffered a mental or emotional disorder as a result of a mental trauma in the course of his employment sustained a "personal injury" within the meaning of and compensable under G. L. c. 152. [637-639]

In a workmen's compensation case, there was no error in the admission of portions of a hospital record and death certificate relating to the employee's suicide where the single member's finding of suicide was based on independent evidence which was adequate to support her finding. [639]

There was nothing in the record of a workmen's compensation case to support the insurer's claim that costs and fees allowed in the Superior Court were unreasonable and excessive. [639-640]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board.

The case was heard by *Tuttle*, J., a District Court judge sitting under statutory authority.

The Supreme Judicial Court granted a request for direct appellate review.

*Paul F. X. Powers* for the self-insurer.

*Bernard T. Loughran* for the claimant.

ABRAMS, J.  This is an appeal by the self-insurer from a judgment of the Superior Court awarding compensation to the deceased employee's widow under the Workmen's Compensation Act, G. L. c. 152. The judgment affirmed the decision of the reviewing board which had affirmed and adopted the findings and decision of the single member. We granted an application for direct appellate review.

The crux of the self-insurer's appeal concerns whether there were errors of law which tainted a finding by the Industrial Accident Board (board) that a mental or emotional disorder caused by a mental or emotional shock suffered at work is a "personal injury arising out of employment." We find no errors of law and affirm the judgment of the Superior Court.

We summarize the facts. On August 24, 1973, the employee, Vincent P. Fitzgibbons (Fitzgibbons), a supervisory correction officer at the Billerica house of correction, ordered several officers to place an inmate in a more segregated unit in an effort to quell an inmate disturbance at the facility. During the removal of the inmate a scuffle ensued. One officer involved in the altercation became ill and was dispatched first to an infirmary and then to a hospital where he was pronounced dead.

Fitzgibbons, on being informed of the officer's death, began to cry and became very shaky and upset. Fitzgibbons then went to the infirmary and later to a hospital where a diagnosis of acute anxiety reaction was made and medication was prescribed. Within a day or two Fitzgibbons saw his own doctor who prescribed even stronger medication.

After the incident on August 24, Fitzgibbons never worked again. He became withdrawn and talked mostly of the officer's death and of his personal responsibility for the death. During conversations with his wife, his family, and the assistant deputy master of the facility, Fitzgibbons often cried and appeared nervous and upset over the officer's death.

On September 14, he kept an appointment with a representative of the county retirement board. According to the county representative, Fitzgibbons appeared in good spirits. Mrs. Fitzgibbons (claimant) came home about 1:45 P.M. Shortly after her arrival she found her husband bleeding from the head due to a gunshot wound. Fitzgibbons was taken to the hospital. On October 5, 1973, he died from the gunshot wound.

The board in adopting and affirming the findings of the single member found that following the prison incident "the employee became obsessed with guilt, and was unable to function normally, concentrating solely on his imaginary responsibility for the death of a guard. As a result of his obsession and overwhelming guilt, the employee shot himself. . . ." Accordingly, the board concluded that "the employee sustained a personal injury on August 24, 1973, as evidenced by his immediate emotional reaction following the dramatic incident at work. . . . [A]s result of said injury, i.e., psychotic depression, the employee committed suicide and . . . said suicide was the result of the employee being of 'such unsoundness of mind as to make him irresponsible for his act of suicide' [G. L. c. 152, § 26A]."

The self-insurer first argues that the evidence is insufficient to sustain the board's finding of causal connection between the prison incident of August 24, 1973, and the employee's suicide. Where the causation between the work-related injury and the resulting physical or psychological ramifications is not common knowledge, as is the case here, expert testimony is required. The probative value of this testimony is to be weighed by the fact-finding tribunal. The board's decision is "to be accepted as final if . . . supported

by the evidence, including all rational inferences which could be drawn therefrom, and if not tainted by error of law." *Foley's Case,* 358 Mass. 230, 232 (1970). *Haley's Case,* 356 Mass. 678, 680 (1970).

The self-insurer's expert testified that the employee suffered from involutional or change of life melancholia which began at the time of the employee's hospital admissions for treatment of his diverticulitis[1] and that the employee's depression leading to suicide was the result of the involutional melancholia, not the August 24 incident.

The psychiatrist called on behalf of the claimant testified that the employee suffered from a psychotic depressive reaction caused by the prison incident and that the psychotic depressive reaction was responsible for the unsoundness of mind that resulted in suicide. The testimony of this expert if believed disposes of the self-insurer's argument that the evidence was insufficient to warrant a finding of causal connection. *Lambert's Case,* 364 Mass. 832 (1973). It is within the province of the board to accept the medical testimony of one expert and to discount that of another. *Rennie's Case,* 357 Mass. 640, 644 (1970). *Rackowski's Case,* 273 Mass. 363, 364 (1930).

The claimant's expert gave reasons for his opinion and explained that the employee's medical history and background were more consistent with a diagnosis of psychotic depressive reaction resulting from the prison incident than with a diagnosis of involutional melancholia. This evidence constitutes more than the mere possibility or chance of the existence of a causal connection between the employee's work

---

[1] In addition to the incident of August 24, 1973, the employee's relevant medical history included four hospitalizations during the period from February, 1972, to February, 1973, in connection with a diverticulitis condition which required surgery. As a result of this medical problem he was out of work for approximately twenty weeks during that year-long period. The employee returned to work in April, 1973, and worked until August 24, 1973. The board found that the employee "experienced no further medical difficulties sufficient to prevent him from carrying out his normal duties" following his return to work in April, 1973.

experience and condition. The board's decision is supported by the record and thus must be sustained. *Anderson's Case,* 373 Mass. 813, 816 (1977).

The insurer next contends that the personal injury in this case is not compensable. While the term "personal injury" is not defined comprehensively under our act, G. L. c. 152, § 1 (7A), it has been interpreted in light of the act's policy to provide "relief for workers receiving injury in the course of and arising out of their employment." *Duart* v. *Simmons,* 231 Mass. 313, 318 (1918), appeal dismissed, 251 U.S. 547 (1920). Personal injury has been broadly defined to include "whatever lesion or change in any part of the system produces harm or pain or a lessened facility of the natural use of any bodily activity or capability." *Burns's Case,* 218 Mass. 8, 12 (1914).

Thus, we have interpreted the term "personal injury" to include mental and nervous disorders arising out of employment where such injuries are the result of physical trauma, no matter how slight the impact. See *McEwen's Case,* 369 Mass. 851 (1976); *Lambert's Case,* 364 Mass. 832 (1973); *Hogan's Case,* 348 Mass. 795 (1965); *Silbovitz's Case,* 343 Mass. 372 (1961); *McIsaac's Case,* 266 Mass. 67 (1929); *Sinclair's Case,* 248 Mass. 414 (1924); *Sponatski's Case,* 220 Mass. 526 (1915); *Hunnewell's Case,* 220 Mass. 351 (1915). Additionally we have established that physical and organic disorders resulting from mental trauma are compensable personal injuries where there is a causal relationship between the mental trauma, the physical or organic injury, and "the nature, conditions, obligations or incidents of the employment; in other words, out of the employment looked at in any of its aspects." *Caswell's Case,* 305 Mass. 500, 502 (1940). See *McMurray's Case,* 331 Mass. 29 (1954); *Egan's Case,* 331 Mass. 11 (1954); *Charon's Case,* 321 Mass. 694 (1947). See also *Teachers' Retirement Bd.* v. *Contributory Retirement Appeal Bd.,* 346 Mass. 663 (1964); *Baruffaldi* v. *Contributory Retirement Appeal Bd.,* 337 Mass. 495 (1958).

We conclude that the term "personal injury" also permits compensation in cases involving mental disorders or disabil-

ities causally connected to mental trauma or shock arising "out of the employment looked at in any of its aspects." *Caswell's Case, supra* at 502. There is no valid distinction which would preclude mental or emotional disorders caused by mental or emotional trauma from being compensable. See *McMurray's Case, supra* at 32; 1A A. Larson, Workmen's Compensation § 42.23 (1973). In general, decisions elsewhere have awarded compensation where mental disorders have been causally connected to mentally traumatic events arising out of employment. See, e.g., *Pathfinder Co. v. Industrial Comm'n,* 62 Ill. 2d 556 (1976); *Wolfe* v. *Sibley, Lindsay & Curr Co.,* 36 N.Y.2d 505 (1975); 1A A. Larson, *supra* at 7-373; Larson, Mental & Nervous Injuries in Workmen's Compensation, 23 Vand. L. Rev. 1243, 1260 (1970). See also Render, Mental Illness as an Industrial Accident, 31 Tenn. L. Rev. 288 (1964).

The self-insurer, however, contends that recovery is foreclosed in this case by *Begin's Case,* 354 Mass. 594 (1968). That case held that the emotional disturbance sustained by an employee resulting from the stress of his employment over a three and one-half year period was not a personal injury within the meaning of the act. *Begin's Case* relied on *Maggelet's Case,* 228 Mass. 57 (1917), *Reardon's Case,* 275 Mass. 24 (1931), and *Pimental's Case,* 235 Mass. 598 (1920), which have come to stand for the doctrine of wear and tear. Under that doctrine the "gradual breaking down or degeneration of tissues caused by long and laborious work is not the result of a personal injury within the meaning of the act." *Maggelet's Case, supra* at 61. The contention is that the instant case is "not distinguishable in principle" from *Begin's Case.* We disagree. In this case, the claimant's expert specifically found that the single traumatic event caused a psychotic depressive reaction. Thus, there is in this case a mental injury resulting from a stress greater than the ordinary stresses of everyday work. *Begin's Case* is, therefore, inapplicable.

It is also argued that the injury here was caused by the employee's unwarranted guilt feelings and that the subjec-

tive nature of these feelings made them a personal idiosyncrasy, not a work-related injury. *Korsun's Case*, 354 Mass. 124, 128 (1968). In *Korsun's Case*, however, there was a lack of evidence with which to connect the alleged precipitating event to Korsun's employment; in the present case, there was no such lack of evidence. Moreover, the fact that the guilt feelings might be subjective is insufficient to bring this case within the rule of *Korsun's Case* since the event triggering the guilt feelings is the relevant criterion in determining whether the injury is compensable.

The self-insurer further assigns error in the denial of its motion to strike the portions of a hospital record and death certificate which relate to suicide. It is not necessary to determine whether or not the portions to which the self-insurer objects are admissible under G. L. c. 233, § 79,[2] and c. 46, § 19, respectively, since the single member stated that her finding of suicide was "based on evidence, independent of any verbiage in the Death Certificate or hospital or police reports concerning 'suicide.'"

The self-insurer argues that the board's finding of suicide is speculative in the absence of this evidence. However, there was evidence of the location of the entry and exit wounds, the location of the powder burns, the position of the employee in relation to the gun, and the employee's mental condition. An expert testified that he found that these facts were more consistent with suicide than with an accident. The finding of suicide was based on reasonable inferences from the evidence; it cannot be said that the board's finding is wholly lacking in testimonial support.

The self-insurer suggests that the costs and fees allowed in the Superior Court were unreasonable and excessive. "There

---

[2] It is unclear on the record whether the hospital records were admitted under G. L. c. 152, § 20, which contains no limitation on the admission of hospital records, or under G. L. c. 233, § 79. Since we find no error, in any event, we will assume that the more restrictive statute, G. L. c. 233, § 79, might be applicable under these facts. However, in most instances, admission of hospital records in workmen's compensation hearings is governed by G. L. c. 152, § 20.

is nothing in the record showing the amount of work done by the attorney, the necessary time spent in its performance, or the various other details which must be considered in arriving at a fair estimate of the value of his services." *Watson's Case,* 322 Mass. 581, 586 (1948). In the absence of a basis in the record which would support the self-insurer's claim we are not inclined to substitute our judgment for that of the Superior Court judge as to the allowance of costs and expenses of appeal to the Superior Court. "The amount of the allowance in the Superior Court for meeting there the issues briefed and argued before us will of course be an appropriate consideration for the single justice in making an allowance for costs of the appeal to this court." *Joyce's Case,* 350 Mass. 77, 82 (1966). See *Peters's Case,* 362 Mass. 888 (1972); G. L. c. 152, § 11A.

The judgment of the Superior Court is affirmed. Costs and expenses of appeal under G. L. c. 152, § 11A, shall be allowed by a single justice.

*So ordered.*