**Joseph J. UNDERWOOD, Jr., Plaintiff,**

v.

**DIGITAL EQUIPMENT CORPORA-
TION, INC., Defendant.**

**Civ. No. 78–490–S.**

United States District Court,
D. Massachusetts.

Oct. 31, 1983.

Richard L. McVity, Lincoln, Mass., for plaintiff.

Philip Berkowitz, Epstein, Becker, Borsody & Green, New York City, for defendant.

## MEMORANDUM AND ORDER

SKINNER, District Judge.

The plaintiff, a former Digital employee, brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and 42 U.S.C. § 1981 ("§ 1981"), alleging that Digital discriminated against him on the basis of his race. He also alleges that Digital breached an oral contract of employment by failing to give him a salary review after six months of employment, and claims that Digital defamed him by noting on his termination records that his resignation constituted only a minor loss and that the company should not rehire him. The amended complaint also alleges that Digital intentionally inflicted severe emotional distress upon the plaintiff, and claims that Digital has "caused him untold physical and mental suffering and [has] eroded his family life to the point where normal relations are no longer possible between himself and his wife". The plaintiff seeks $10,521,638 in damages. The defendant has moved for summary judgment.

Digital employed the plaintiff as a human resources development specialist from July, 1973 until his resignation in April, 1976. In July, 1975, October, 1975, and June, 1976, the plaintiff filed charges of employment discrimination against Digital with the Equal Employment Opportunity Commission ("EEOC"). In October, 1975, he filed a similar complaint with the Massachusetts Commission Against Discrimination ("MCAD"). On November 25, 1977, the EEOC issued a finding that no reasonable cause existed to believe that the plaintiff was the victim of unlawful discrimination. Shortly thereafter, the MCAD also dismissed the plaintiff's complaint. At the plaintiff's request, the MCAD reopened its investigation. On November 28, 1979, the MCAD found no probable cause to believe the plaintiff was the victim of unlawful discrimination.

The plaintiff filed his first complaint in this action on February 24, 1978. I dismissed that complaint for want of prosecution on December 19, 1980. On April 8, 1982, I granted the plaintiff's motion to reinstate the case. The plaintiff filed an amended complaint on July 20, 1982 which added a claim under § 1981. Digital then counterclaimed, alleging that the plaintiff had defamed the company.

In the June 4, 1976 complaint which the plaintiff filed with the EEOC, the plaintiff summarized his view of the facts of this case in the following manner:

After constant and ongoing harassment, intimidation and isolation and after extreme anguish of mind and being unable

both physically and mentally to continue to endure, I tendered my resignation from Digital Equipment Corporation on or about April 16, 1976. Chief among these acts of harassment, intimidation and isolation are the following: 1) Despite my primary responsibility toward the Massachusetts area of Digital Corporation (encompassing about 18,000), I was not given either minimum technical aid or professional assistance. 2) I suffered loss of professional status among outside counterparts due to intentional interference on the part of the personnel director, Mr. Dennis Burke. 3) Despite the fact that it was a key element of my position, I was prevented from presenting Drug and Alcohol Educational Seminars to requesting managers. 4) I was forced to operate without a budget or adequate management support and commitment, indicating to me that I was placed into a job category (employee support services coordinator) which was from its conception programmed to fail. I feel that these acts of harassment were a direct result of my filing formal charges under Title VII and also because of my race and color.

### A. The § 1981 Claim.

■ The first issue in this case is whether the plaintiff's § 1981 claim was filed on a timely basis. Since § 1981 does not contain my limitations, courts must incorporate the limitations period of the most analogous state statute. *Burns v. Sullivan,* 619 F.2d 99, 105 (1st Cir.1980). The analogous Massachusetts statute for employment discrimination claims brought under § 1981 is M.G.L. c. 151B, § 5. *Carter v. Supermarkets General Corp.,* 684 F.2d 187 (1st Cir.1982). Even if the plaintiff's § 1981 claim related back to the filing of the original claim pursuant to Fed.R.Civ.P. 15(c), the plaintiff's claim was filed more than six months after his resignation and therefore is barred unless the plaintiff can allege facts sufficient to suggest the possibility of a "continuing injury".

■ A "continuing injury" will toll the statute of limitations, and the plaintiff has alleged that Digital's actions constitute such an injury. In order to avoid an adverse summary judgment on this issue, the plaintiff must at the minimum allege facts sufficient to suggest the possibility that both the injury and the discrimination are ongoing. *See Goldman v. Sears, Roebuck & Co.,* 607 F.2d 1014, 1018 (1st Cir.1979).

■ Neither the plaintiff's affidavits nor his amended complaint allude to any Digital actions taken after May, 1976. The plaintiff's memorandum in opposition to the defendant's motion for summary judgment does not cite any fact which could form the basis of a continuing injury. I gather, however, from the plaintiff's deposition that the basis of the continuing injury allegation is the negative evaluation in the plaintiff's personnel record. Underwood Deposition at 3–180. In his deposition, the plaintiff asserted that the checkmarks next to the "minor loss" and "do not rehire" boxes on his personnel form have "had a serious effect on me up until to [sic] date because of the negative statements that are now coming out of your office concerning myself". *Id.* It is important to evaluate this comment in the context of the following exchange between the plaintiff and Digital's attorney:

Q: Have you ever applied for a job and been denied a job because of these evaluations?

A: Basically I refrain from applying for jobs that I want to be considered for because of these evaluations.

Q: So, your answer then is no?

A: My answer is I really can't recall. I do remember applying for another position other than the probation officer job, but I can't remember which time frame I had done that.

Q: Has anyone ever told you that the reason you weren't getting a job was because of something that Digital said about you or wrote about you?

A: No one ever said that it wasn't nor that it was.

Q: What job were you denied?

A: Excuse me?

Q: What job were you denied after you left Digital? You said you applied for another job besides probation officer.

A: I said that I had applied I believe for another job. I can't recall which time frame it was.

Q: Do you remember what job it was?

A: It was working for an insurance company in Hartford, Connecticut.

Q: Do you recall whether it was before you left Digital or after you left Digital?

A: As I repeated, I don't recall the exact time frame.

Q: Did they turn you down?

A: I can't remember now if we didn't come to terms or what the exact situation was.

Q: Did you write them a letter?

A: I don't recall. If I had, it would have been submitted with those other documents.

Q: So, you don't recall whether they turned you down or not?

A: It's very vague, yes, but as I have stated before, I did not apply for positions because of the negative and the mistruth that Digital Equipment Corporation purposely, I believe, placed in my personnel file.

*Id.* at 3–170 and 3–171.

It appears from this exchange that the continuing injury the plaintiff is alleging is not a pattern of negative references but is at best the fear of receiving such references.

In *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), the plaintiff brought an employment discrimination case under § 1981. Ricks was a black alien denied tenure by a state college. After the denial, Ricks accepted a one-year terminal employment contract, a standard arrangement made by this and many other institutions. He argued that a "continuing violation" tolled the one-year statute of limitations applied to his case, and that the court should begin the limitations period from the date of his final termination rather than the date of denial of tenure.

In *Ricks,* the Supreme Court held that the only alleged discrimination occurred at the time the decision was made and communicated to Ricks, and that subsequent *effects* of that decision did not constitute a continuing injury. *Id.* at 258, 101 S.Ct. at 504. *Ricks* is squarely on point. Even in the unlikely event that Digital has made negative comments about the plaintiff to prospective employers, under *Ricks* such recommendations would simply be the effects of an earlier action. The plaintiff has never alleged that Digital treated him subsequent to his resignation differently from the way in which it has treated other former employees who have left the company under less than amicable circumstances. Accordingly, the plaintiff did not file this action until almost two years after the last injury allegedly inflicted by Digital, and therefore the six-month statute of limitations bars this claim.

B. *The Intentional Infliction of Emotional Distress.*

■ The plaintiff alleges that by a variety of acts Digital committed the tort of intentional infliction of emotional distress. The defendant contends that this claim is barred by the Massachusetts Workmen's Compensation Act, M.G.L. c. 152, § 24, which states in relevant part:

An employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury therein occurring, to recover damages for personal injuries if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right ...

The plaintiff has not alleged that he gave appropriate notice pursuant to this statute, so the only question remaining is whether emotional distress is a "personal injury" within the meaning of the statute.

In *Fitzgibbon's Case,* 374 Mass. 633, 373 N.E.2d 1174 (1978), the Supreme Judicial Court held that emotional distress arising out of employment was a "personal injury" under the statute. The Supreme Judicial Court subsequently held that the Workmen's Compensation statute, absent an express reservation of rights, bars an action for intentional infliction of emotional distress arising out of an employer's conduct. *Foley v. Polaroid Corp.,* 381 Mass. 545, 413 N.E.2d 711 (1980). The defendant is entitled to summary judgment on this claim.

## C. *Defamation.*

The plaintiff bases his claim of defamation on the fact that at about the time the plaintiff resigned, a Digital personnel officer checked off boxes on a standardized form which indicated that the plaintiff's departure was "a minor loss" and that he should not be rehired.

■ The threshold question in this case is whether the allegedly defamatory statements constitute fact or opinion, for "under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas". *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339–340, 94 S.Ct. 2997, 3006–3007, 41 L.Ed.2d 789 (1974). The determination as to whether a statement is one of fact or opinion is generally a question of law. *See Greenbelt Cooperative Publishing Association v. Bresler,* 398 U.S. 6, 13, 90 S.Ct. 1537, 1541, 26 L.Ed.2d 6 (1970).

■ In *Cole v. Westinghouse Broadcasting Co., Inc.,* 386 Mass. 303, 435 N.E.2d 1021 (1982), an official statement released to the media announced that the plaintiff had been fired for "misconduct and insubordination". In a later interview, an employee of the defendant stated to the media that the plaintiff had engaged in "sloppy and irresponsible reporting". In *Cole,* the Supreme Judicial Court held that in deciding whether statements can be understood reasonably as fact or opinion, courts must "examine the statement in its totality in the context in which it was uttered or published". *Id.* at 309, 435 N.E.2d 1021, *quoting Information Control Corp. v. Genesis One Computer Corp.,* 611 F.2d 781, 784 (9th Cir.1980). According to *Cole,* a court must give weight to cautionary terms used by the person publishing the statement and the circumstances surrounding the statement, including "the medium by which the statement is disseminated and the audience to which it is published". *Id.; accord Myers v. Boston Magazine Co.,* 380 Mass. 336, 403 N.E.2d 376 (1980). In applying this test, it found that the defendants' statements were, as a matter of law, opinions, and hence not actionable.

The *Cole* standards dictate that I find that the defendant's statements are not actionable. The questions of whether the defendant is only a minor loss to Digital and whether he should be considered again for possible employment are inherently subjective questions which rely as much on an assessment of Digital's needs as on the plaintiff's capabilities. Digital is also entitled to its opinions of its employees, particularly when, as in *Cole,* they are "imprecise" and cannot be "characterized as statements of particular facts". *Supra* 386 Mass. at 312, 435 N.E.2d 1021. There is no way to prove or disprove the contested statements. *Id.* Moreover, in viewing the entire record, I find that Digital's action was a routine internal communication with no likely intended audience. While the two statements might at some point have become the basis for a Digital recommendation, there is no evidence that Digital intended to or did photocopy this form and send it to an outside audience except at the request of the plaintiff.

Accordingly, the defendant's motion for summary judgment as to Counts II, IV and V of the plaintiff's complaint is ALLOWED. Count I (the 42 U.S.C. § 2000e claim) and Count III (the breach of contract claim) remain for trial, as does the defendant's counterclaim.