**Joy MILLER, Plaintiff,**

v.

**SHAWMUT BANK OF BOSTON, N.A., and Shawmut Community Bank, N.A., Defendants.**

**Civ. A. No. 86–0875–T.**

United States District Court, D. Massachusetts.

Dec. 5, 1989.

Richard Abbott, Brookline, Mass., for plaintiff.

Douglas F. Seaver, Timothy Q. Feeley, Gaston Snow and Ely Bartlett, Boston, Mass., for defendants.

## MEMORANDUM

TAURO, District Judge.

Plaintiff, a black female, began working as a teller at Shawmut Community Bank, N.A. ("Shawmut Community") on February 23, 1981. She ultimately resigned in July 1986, by which time she had been promoted to the position of Customer Service Representative.

Plaintiff claims that, during her employment, both Shawmut Community and Shawmut Bank of Boston, N.A.[1] ("Shawmut Boston"), with racial motivation, de-

nied or delayed several opportunities for her to advance. Specifically, plaintiff alleges the following instances of racial discrimination: 1) On August 9, 1982, Shawmut Community promoted an allegedly less-qualified, white employee over plaintiff to the position of Head Teller; 2) on September 19, 1983, Shawmut Community promoted another allegedly less-qualified, white employee over plaintiff to the position of Head Teller; 3) on or about February 3, 1986, plaintiff was turned down for a job with Shawmut Boston as a customer service telephone representative; and 4) in March 1986, plaintiff's supervisor discouraged her from applying for a job with Shawmut Community as a Personal Banker, even though plaintiff was allegedly qualified for the job. In this latter instance, plaintiff was attempting to move from a position as a Customer Service Representative that she had held since September 1984.

In addition to these alleged interferences with her career advancement, plaintiff claims that her co-workers and managers often directed ethnic and racial slurs toward her, and that her supervisor publicly criticized and racially harassed her.

Plaintiff filed her first Complaint in March 1986 claiming only that Shawmut Boston, in rejecting her application for the job as a telephone representative, violated plaintiff's civil and constitutional rights.[2] Plaintiff amended her Complaint on November 10, 1986 to add similar claims against Shawmut Community, based on Shawmut Community's alleged discriminatory conduct.[3]

Presently at issue are defendant Shawmut Community's motions for summary

---

1. Shawmut Community and Shawmut Boston are separate legal entities, but are subsidiaries of the same parent bank, Shawmut Corporation.

2. Plaintiff's first Complaint alleged that Shawmut Boston violated 42 U.S.C. § 1981 and Mass. Gen.Laws ch. 12, § 11I, and intentionally inflicted emotional distress in violation of plaintiff's civil rights.

3. The Amended Complaint, therefore, contains six counts. Counts I–III allege the same claims against Shawmut Boston contained in the first Complaint. Counts IV–VI allege similar viola-

tions by Shawmut Community. Count IV alleges that Shawmut Community's promotion of the two white employees to Head Teller, the discouragement from plaintiff's supervisor regarding the job as Personal Banker, and the racial slurs and harassment by coworkers and managers violated 42 U.S.C. § 1981. Count V alleges that the same conduct violated state civil rights law, Mass.Gen.L. ch. 12, § 11I. Finally, Count VI alleges that Shawmut Community intentionally inflicted emotional distress in violation of plaintiff's civil rights.

judgment as to Count IV, and to dismiss Counts V and VI. Each of these motions will be addressed *seriatim.*

## I.

Defendant moves for summary judgment as to Count IV, the alleged violations of 42 U.S.C. § 1981, relying on the case of *Patterson v. McLean Credit Union,* 491 U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989).

In *Patterson,* the Supreme Court read strictly the language of § 1981 and held that:

> ... racial harassment relating to the conditions of employment is not actionable under § 1981 because that provision does not apply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract relations.

109 S.Ct. at 2369. The Court construed the statute "not as a general proscription of racial discrimination in all aspects of contract relations, but as limited to the enumerated rights ... to make and enforce contracts." *Id.* 109 S.Ct. at 2375.

After identifying the narrow class of rights protected by § 1981, the Court went on to define the scope of those rights:

> [T]he right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions. Such postformation conduct does not involve the right to make a contract, but rather implicates the performance of established contract obligations and the conditions of continuing employment, matters more naturally governed by state contract law and Title VII.
>
> ... The right to enforce contracts does not ... extend beyond conduct by an employer which impairs an employee's

ability to enforce through legal process his or her established contract rights. *Id.* 109 S.Ct. at 2373.

Applying these principles to the facts before it, the Court held that Ms. Patterson's claim of racial harassment was not actionable. Ms. Patterson had alleged facts similar to those alleged in the case at bar: 1) frequent staring by her supervisor; 2) her supervisor gave her too many tasks, some of which were never given to white employees; 3) the supervisor made racial slurs; 4) the company failed to promote her; and 5) she received public criticism from the supervisor which was never given to white employees. The Court held that all of these allegations, except the failure to promote, involved "postformation conduct by the employer relating to the terms and conditions of employment" and, therefore, were unactionable under § 1981. *Id.* 109 S.Ct. at 2374. In other words, to the extent that Patterson was challenging the *conditions of the workplace,* she could not sue under § 1981. *Id.*

As to Patterson's allegation that she was refused promotion, the Court said in dictum:

> [T]he question whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer.... Only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981.

*Id.* 109 S.Ct. at 2377. By way of illustration, the Court referred parenthetically to *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), in which a law firm's refusal to accept an associate into the partnership was held to have given rise to a claim cognizable under Title VII. Because the *Patterson* Court did not need to resolve the issue, however,[4] it offered no additional guidance for determining when a promotion rises to the level of a "new and distinct relation."[5]

---

**4.** McLean Credit did not argue that the promotion claim was not actionable under § 1981.

**5.** This absence of guidance has left the lower courts in a state of apparent disagreement. For example, some courts read the "new and dis-

## II.

█ The similarity of the allegations in *Patterson* and the case at bar makes the application of *Patterson* to this case fairly straightforward. As in *Patterson,* with the exception of the allegations relating to the alleged refusal to promote, plaintiff's assertions relate solely to "postformation conduct." The alleged racial slurs, public criticism and harassment at the workplace were clearly "conditions of continuing employment" and did not interfere with plaintiff's right to make or enforce contracts. As such, they are not actionable under § 1981.

## III.

The alleged refusals to promote are a different matter, however. If, in light of the dictum in *Patterson,* the promotions plaintiff claims to have lost would have given rise to "new and distinct relations between the employee and the employer," then Shawmut Community's alleged interference with plaintiff's promotions is actionable under § 1981.

### A. *The Head Teller Position*

The first promotion plaintiff alleges she lost was the job of Head Teller, once in 1982, and again in 1983. Defendant argues that the jobs of Teller and Head Teller differ only in degree and not in kind and, therefore, the promotion would not have given rise to a new and distinct employment relationship. Plaintiff, on the other hand, claims that the jobs of Teller and Head Teller are "markedly different." Because the claims based on the promotions to Head Teller are time-barred, however, it is unnecessary to decide whether a promotion to Head Teller rises to the level of a "new and distinct relation" contemplated by the *Patterson* court.

█ Actions under § 1981 must be filed within the same period of time in which personal injury suits must be brought in the state of the forum court. *G.P. Reed v. United Transportation Union,* — U.S. ——, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989); *Goodman v. Lukens Steel,* 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987). In Massachusetts, that period is 3 years.[6] The allegations at issue were not made until November 10, 1986, when plaintiff filed her amended complaint. The alleged refusals to promote plaintiff to Head Teller on August 9, 1982 and September 19, 1983 are, therefore, beyond the limitations period.

Plaintiff concedes this application of the statute of limitations, but argues that the doctrine of "continuing violations" saves the two incidents from being time-barred. Specifically, plaintiff contends that the refusals to promote plaintiff to Head Teller were merely manifestations of Shawmut Community's continuing policy of discriminating against blacks that continued well within the limitations period. Defendant, however, argues that the alleged refusals to promote were isolated incidents occuring outside the limitations period and, therefore, plaintiff may not use the "continuing violations" theory to preserve her claims.

The limitations period ordinarily begins to run upon the commission of a discriminatory act. But, under the doctrine of "continuing violations," "a true 'continuing violation' rewinds the clock for each discrimi-

---

tinct" exception broadly, *see e.g, Mallory v. Booth Refrigeration Supply Co., Inc.,* 882 F.2d 908, 910 (4th Cir.1989) (promotion from clerk to supervisor qualifies as new and distinct relation); *Green v. Kinney Shoe Corp.,* CA No. 88–0365, 1989 WL 133993 (D.D.C. Sept. 15, 1989) (LEXIS, Genfed library, Dist file) (promotion from shoe salesman/manager-in-waiting to manager of shoe store qualifies as new and distinct relation); *Luna v. City and County of Denver,* 718 F.Supp. 854 (D.Colo.1989) (promotion from project inspector to supervisory engineer qualifies as new and distinct relation). Other courts read the exception narrowly. *See e.g., Malhotra v. Cotter & Co.,* 885 F.2d 1305,

1311 (7th Cir. Sept. 12, 1989) (promotion that is merely routine advancement for existing employees is not new and distinct relation); *Sofferin v. American Airlines Inc.,* 717 F.Supp. 597 (N.D.Ill.1989) (promotion of employee from probationary to tenured status is not new and distinct relation); *Williams v. National Railroad Passenger Corp.,* 716 F.Supp. 49 (D.D.C.1989) (promotion providing for mere increase in pay is not new and distinct relation).

6. Mass.Gen.Laws Ann. ch. 260, § 2A (West Supp.1989).

natory episode along the way." *Mack v. Great Atlantic and Pacific Tea Co., Inc.*, 871 F.2d 179, 183 (1st Cir.1989). The First Circuit has noted that the doctrine of continuing violations is "often invoked in cases ... in which there has been no single act of discrimination sufficient to trigger the running of the limitations period," *Velazquez v. Chardon*, 736 F.2d 831, 833 (1st Cir. 1984), but has not yet determined whether distinct acts that occur outside the limitations period may be actionable as being related to acts occuring within the limitations period.

> This Circuit has yet to rule squarely on this issue, and we prefer not to do so in the absence of a concrete factual situation.... [A]t least one member of the panel doubts whether the "continuing violations" theory should operate to allow recovery with respect to a distinct act of discrimination taking place at an identifiable point of time outside the limitations period. It may be that the continuing violation theory is more appropriately limited to a situation where there is no single act of discrimination sufficient to trigger the running of the limitations period.

*Cajigas v. Banco de Ponce*, 741 F.2d 464, 470 (1st Cir.1984).

■ In the case at bar, both of the alleged refusals to promote plaintiff to Head Teller were distinct and isolated incidents of discrimination, and each one alone would have been sufficient to give rise to a § 1981 claim. Although there is no definitive precedent in this Circuit, a reading of *Cajigas* in conjuction with *Chardon* suggests that this Circuit does not permit the use of the "continuing violations" theory to draw into litigation otherwise time-barred incidents of discrimination that were sufficiently distinct to trigger the running of the limitations period.[7] As this court has noted, to construe the doctrine of "continuing violations" loosely would undermine the purposes of the statute of limitations. *Tarvesian v. Carr Division of TRW, Inc.*, 407 F.Supp. 336, 340 (D.Mass.1976) (Tauro, J.). Accordingly, the § 1981 claims based on the alleged refusals to promote plaintiff to Head Teller are time-barred.

### B. The Personal Banker Position

■ Plaintiff also claims to have been denied a promotion to the position of Personal Banker. As with the job of Head Teller, the parties dispute the degree to which a promotion from Customer Service Representative to Personal Banker amounts to a new and distinct employment relationship. Again, defendant argues that the jobs are not sufficiently distinct to satisfy *Patterson*. Plaintiff, on the other hand, contends that the jobs are sufficiently distinct and, further, that Shawmut itself viewed them as such.

In support of her argument, plaintiff points to an internal Shawmut memorandum which provides a chart of various Shawmut positions and their relative ranks. *See* Exhibit A, Plaintiff's Opposition To Motion For Summary Judgment, p. 3. The chart clearly reflects that the jobs of Customer Service Representative and *Senior* Personal Banker are considered to be significantly different jobs. The job of Personal Banker, however, does not appear on the chart. At the November 2, 1989 conference, defendant's counsel stated that he was unsure where the job of Personal Banker should appear on the chart. Moreover, plaintiff and defendant each submitted affidavits which present inconsistent views of the duties of a Personal Bank-

---

7. *See Cogen v. Milton Bradley Co./Hasbro Inc.*, 49 Empl.Prac.Dec. (CCH) ¶ 38,894, 1989 WL 81067 (D.Mass.1989) (Ponser, Mag.) (reading *Cajigas* and *Chardon* to reject the use of continuing violations theory to include discrete time-barred acts of discrimination in litigation of related incident). *See also Tarvesian v. Carr Division of TRW, Inc.*, 407 F.Supp. 336, 340 (D.Mass.1976) (Tauro, J.) citing *Loo v. Gerarge*, 374 F.Supp. 1338, 1340 (D.Hawaii 1974):

> ... [W]hile layoffs followed by failures to rehire, or systems of discrimination against particular groups may be "continuing," isolated and completed acts are not. Once a disparaging remark is made, or a transfer is denied, or a demeaning work assignment is given, it is, without more, a completed and isolated act: such practices do not give the Plaintiff a perpetual right to file charges before the EEOC.

er.[8] Thus, accepting plaintiff's factual averments as true, and drawing all reasonable inferences in plaintiff's favor, *McDonald v. Sante Fe Trail Transp. Co.*, 427 U.S. 273, 276, 96 S.Ct. 2574, 2577, 49 L.Ed.2d 493 (1976), *Mack v. Great Atlantic and Pacific Tea Co., Inc.*, 871 F.2d 179 (1st Cir.1989), there remains a significant dispute as to the material fact of whether the jobs at issue are sufficiently distinct for purposes of *Patterson.* Accordingly, plaintiff's § 1981 claim based on the promotion to Personal Banker survives defendant's motion for summary judgment.

### IV.

Defendant also moves to dismiss Count V, the claim for violations of state civil rights law.[9] Defendant argues that *Patterson* disposes of plaintiff's entire § 1981 claim [10] and, therefore, there is no longer any independent basis for pendent jurisdiction over any state law claims in federal court. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). This argument fails, however, because of this court's ruling that plaintiff's § 1981 claim relating to the promotion to Personal Banker survives defendant's motion for summary judgment. There remains, therefore, a proper basis for pendent jurisdiction over Count V.

### V.

Defendant's final motion is one for dismissal of Count VI. Defendant argues that plaintiff's claim for intentional infliction of emotional distress is barred by the exclusivity provision in Massachusetts' Workers' Compensation Laws, Mass. Gen.L. ch. 152.[11]

To avoid this result, plaintiff argues that her claim does not sound in tort, but rather it is a civil rights cause of action. Indeed, Count VI is entitled: "Intentional Infliction of Emotional Distress—*Civil Rights.*" (emphasis added). Defendant contends, however, that even if Count VI is a civil rights claim, it merely duplicates the § 1981 claim and, therefore, should be dismissed for failure to state a claim.

While it is true that Count VI merely incorporates the same facts alleged in Count IV, it does not follow that plaintiff is simply duplicating her § 1981 claim. The same events that violated § 1981 may also violate another civil rights statute, such as Title VII or 42 U.S.C. § 1985(3).

 Nevertheless, Rule 8 of the Federal Rules of Civil Procedure requires that a pleading be concise and direct, and that it set forth a short and plain statement of the claim. Fed.R.Civ.P. 8(a),(e). Here, Count VI does not allege violations of any specific civil rights statute. Rule 8 is read liberally, however, and "it is not necessary to set out the legal theory on which the claim is based." *Connecticut General Life Insurance Co. v. Universal Insurance Co.*, 838 F.2d 612, 622 (1st Cir.1988) (citations omitted). Failure to allege a specific statute is not fatal where the complaint sets out a "generalized statement of facts from which defendants will be able to frame a responsive pleading." *Haynes v. Philip W. Johnston, et al.*, No. 84–3345–MA slip op. (D.Mass. Sept. 30, 1985) (Mazzone, J.).

Notwithstanding the broad reading of Rule 8, Count VI is impermissibly vague. First, despite plaintiff's contention, a claim

---

8. For example, plaintiff claims that a Personal Banker approves loans, whereas defendant claims that loans must be approved by a manager.

9. Mass.Gen.L. ch. 12, § 11I.

10. *See supra* section I.

11. Mass.Gen.L. ch. 152, § 24 essentially provides that "an employee shall be held to have waived his right of action at common law or under the law of any jurisdiction in respect to an injury that is compensable under this chapter ...", absent an express reservation of right.

Mass.Gen.Laws Ann. ch. 152, § 24 (West 1988). This court has already held that intentional infliction of emotional distress arising out of employment is a "personal injury" that is covered by chapter 152. *Crews v. Memorex Corp.*, 588 F.Supp. 27, 30 (D.Mass.1984) (Tauro, J.); *see also Underwood v. Digital Equipment Corp., Inc.*, 576 F.Supp. 213 (D.Mass.1983) (Skinner, J.); *Fitzgibbon's Case*, 374 Mass. 633, 373 N.E.2d 1174 (1978). All of these cases held that the claims were barred by the exclusivity provision in § 24 and thus disposed of the claims.

of intentional infliction of emotional distress is most reasonably construed as a tort claim rather than a civil rights claim. Moreover, because it simply alleges "civil rights violations" without any statutory basis, defendant is forced to anticipate claims under all conceivable civil rights laws. It would be unreasonable, therefore, to conclude that Count VI fairly permits defendants to frame a responsive pleading.[12] Accordingly, Count VI fails to state a claim and must be dismissed.

### VI.

For the reasons stated above, defendant's motion for summary judgment is allowed as to the allegations in Count IV relating to ethnic and racial slurs, public criticism, racial harassment at the workplace, and the promotions to the job of Head Teller. The motion is denied as to the allegations in Count IV relating to the promotion to Personal Banker. Defendant's motion to dismiss Count V for lack of jurisdiction is denied. Finally, defendant's motion to dismiss Count VI for failure to state a claim is allowed without prejudice, subject to plaintiff's motion to amend the complaint to specify her civil rights claim.

An order will issue.

---

12. *Cf. Kadar Corp. v. Milbury,* 549 F.2d 230, 233 (1st Cir.1977) ("While a complaint need only set out a generalized statement of facts, there must be enough information to outline the elements of the pleaders' claim. More detail is required than a plaintiff's bald statement that he has a valid claim of some type....") (citations omitted).