**RIKAL, INC., Rikal West, Inc. (a wholly owned subsidiary of Rikal, Inc.), Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 83–1233.

United States Court of Appeals, First Circuit.

Argued Oct. 4, 1983.

Decided Nov. 15, 1983.

---

Steven D. Ostrowsky, East Longmeadow, Mass., with whom Fernand J. Dupere, Jr., Springfield, Mass., was on brief, for petitioner.

John D. Burgoyne, Asst. Gen. Counsel, Washington, D.C., with whom William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and Sandra Shands Elligers, Atty., N.L.R.B., Washington, D.C., were on brief, for respondent.

Before CAMPBELL, Chief Judge, TIM-

BERS,* Senior Circuit Judge, and BOWNES, Circuit Judge.

LEVIN H. CAMPBELL, Chief Judge.

This is a petition for review and a cross-application for enforcement of an NLRB order reinstating Robert Kneifel to his position with Rikal West, Inc. ("the Company").

Rikal West, Inc. is a California corporation operating in California, but headquartered in Wellesley, Massachusetts. Rikal West is a subsidiary of Rikal, Inc., a Massachusetts corporation headquartered in Wellesley, Massachusetts.

Robert Kneifel was hired by the Company in August 1979 and worked as a senior technician. Until shortly before his termination, he was regarded as an outstanding employee with management potential. As a result of the Company's conduct relative to the disputed application of a union contract, Kneifel became active in the International Brotherhood of Electrical Workers (IBEW) and was elected shop steward in late November 1980. Kneifel was dismissed by the Company on January 28, 1981 and subsequently filed an unfair labor practice charge with the NLRB on July 7, 1981. The Board issued a complaint against the Company alleging that the Company violated section 8(a)(1) and (3) of the National Labor Relations Act (NLRA) by discharging Kneifel because of his union activities.

The case was tried before an ALJ on March 2, 1982. The ALJ decided adversely to the Company. The Board accepted the ALJ's findings and recommendations, and ordered the Company to cease and desist from engaging in unfair labor practices. Further, the Board ordered affirmative relief, including reinstatement of Kneifel with back pay. The Company and its parent, Rikal, Inc., petitioned this court to review the Board's order. We dismissed the petition as to Rikal, Inc. because the parent was not aggrieved by the Board's order. The Board also urged dismissal as to Rikal West for lack of venue, but we declined to dismiss pending full argument. The Board then filed a cross-application for enforcement of the order.

■ We first consider whether venue lies in this circuit for reviewing the Board's order. Section 10(f) of the NLRA states that "[a]ny person aggrieved by the final order of the Board ... may obtain review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business ...." 29 U.S.C. § 160(f). It is well settled that the unfair labor practice and the Board's hearings need not have occurred in the circuit where review is sought. *NLRB v. Friedman-Harry Marks Clothing Co.,* 83 F.2d 731 (2d Cir.1936). Furthermore, a court of appeals in which venue lies under the statute may not decline jurisdiction simply because it believes that another circuit would be the more appropriate forum. *NLRB v. Indiana & Michigan Electric Co.,* 124 F.2d 50 (6th Cir.1941), *affirmed,* 318 U.S. 9, 63 S.Ct. 394, 87 L.Ed.2d 579 (1943). We must entertain the petition if Rikal West "resides or transacts business" in this circuit.

■ The Company's contacts with this circuit stem from the location of its corporate offices in Massachusetts. The officers of the Company reside and work in Massachusetts, the Company's bank accounts are in Massachusetts banks, the Company's accounting and bookkeeping are conducted in Massachusetts, and the Company's personnel records are kept in its Wellesley offices. These contacts are sufficient to constitute transacting business within this circuit. The Board argues that the Company does not transact business because it employs no workers in Massachusetts. We find this argument unconvincing. The executive officers of the Company work in Massachusetts and those officers are active in the management of the Company's California operations. Indeed at least one of the officers apparently played some role in the alleged unfair labor practice at issue.

---

* Of the Second Circuit, sitting by designation.

The Company's Massachusetts contacts are far more solid than those of the petitioner in *S.L. Industries v. NLRB,* 673 F.2d 1 (1st Cir.1982). We held there that a mere exclusive dealing arrangement between an out-of-state employer and a dealer in Massachusetts did not cause the former to transact business in Massachusetts. No such very ephemeral relationship with the forum circuit is at issue here.

We now address the substance of the Board's order. The Company contends that the ALJ improperly relied on evidence of events which occurred more than six months prior to the filing of the unfair labor practice charge. Section 10(b) of the NLRA provides:

> [N]o complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge . . . .

29 U.S.C. § 160(b). The unfair labor practice is the firing of Kneifel for improper motives and the Company admits that the firing occurred less than six months prior to the filing of the charge. The Company's strained reading of section 10(b) would significantly impair the Board's ability to use predischarge conduct as evidence of an employer's union animus.

The case relied on by the Company, *Machinists Local Lodge No. 1424 v. NLRB,* 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960), is distinguishable. In that case an employer entered into a collective bargaining agreement with a union which did not represent a majority of the covered employees. The agreement contained a union security clause and therefore violated the NLRB rule against an employer entering into a union security clause with a union which only represents a minority of the employees. No timely unfair labor practice was filed and the union subsequently achieved majority representation. When a similar agreement was entered into a year later, an unfair labor practice charge was filed.

■ The Supreme Court held that under those facts "conduct occurring within the limitations period can be charged to be an unfair labor practice only through reliance on an earlier unfair labor practice." 362 U.S. at 417, 80 S.Ct. at 827. To allow such a tactic would vitiate the policies behind section 10(b) and "result[ ] in reviving a legally defunct unfair labor practice." *Id.* The instant case involves no such defunct unfair labor practice, but rather falls under the rule that "earlier events may be utilized to shed light on the true character of matters occurring within the limitations period . . . ." *Id.* at 416, 80 S.Ct. at 826. *See also General Motors Acceptance Corp. v. NLRB,* 476 F.2d 850, 854 n. 7 (1st Cir.1973). Thus the ALJ did not err in considering earlier conduct in deciding on the Company's improper motivation.

■ The Company also argues that the Board erred in finding improper motivation and in rejecting the proffered business justification. The Supreme Court has recently approved the Board's *Wright Line* analysis for "mixed motive" cases. *NLRB v. Transportation Management Corp.,* —— U.S. ——, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983) (approving *Wright Line,* 251 NLRB 1083 (1980), *enforced,* 662 F.2d 899 (1st Cir.1981), *cert. denied,* 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982)). Under the approved procedure, the Board has the burden of proving that the employee's protected conduct was a motivating factor in the discharge. If the Board meets this burden, the employer can avoid being held guilty of an unfair labor practice by proving by a preponderance of the evidence that there was a business justification for the firing and the employee would have been discharged in any event. —— U.S. at ——, 103 S.Ct. at 2472. In reviewing the Board's determinations on motive and business justification, we must uphold those determinations if supported by substantial evidence on the record as a whole. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *Seven-up Bottling Co. of Boston v. NLRB,* 506 F.2d 596, 600 (1st Cir.1974).

■ We have carefully scrutinized the entire record and hold that the ALJ's findings and recommendation, adopted by the

Board, are supported by substantial evidence.

The record from the hearing before the ALJ presents documents and testimony which permit a finding that Kneifel's protected conduct was part of the Company's motivation for firing him. The Company gave Kneifel a substantial pay raise when he expressed concern about payment of wages below the contract rate, and then threatened reprisals against the workers when Kneifel continued to press the point. A supervisor at another plant informed Kneifel shortly before his termination that the Company regarded him as a troublemaker because of his union activity. A personal note written by the regional manager indicated displeasure with one of Kneifel's co-workers, Kerry Perigrina, because of her husband's union activism. Perigrina, the secretary at the facility, was repeatedly questioned by the facility manager regarding Kneifel's union activity and overheard the facility manager say to the regional manager that Kneifel's violation of the company vehicle policy would provide an opportunity to "get" Kneifel.

Regarding the Company's asserted business justification, there is sufficient evidence for a reasonable determination that the Company did not prove that Kneifel would have been discharged irrespective of his union involvement. The reasons given for Kneifel's termination were: tardiness, violation of the vehicle policy, and inadequate performance of one of Kneifel's job functions (*i.e.,* late and inaccurate weekly inventory reports). Kneifel had received two substantial raises and had been evaluated as an outstanding employee with management potential just months before his discharge. This evaluation was given despite Kneifel's long history of tardiness and of late and inaccurate filing of the weekly inventory reports. Further, the Board could conclude that the allegations of tardiness and poor job performance were exaggerated by the regional manager in his testimony. Tardiness and minor violations of the vehicle policy had not resulted in terminating employees, either before or after Kneifel's discharge. Finally, the method of

firing Kneifel was unusual, because the facility manager was neither consulted nor asked for a recommendation regarding the discharge, despite the manager's testimony that in all ten previous firings during his employment he had played an integral role.

■ The Company complains that the ALJ improperly credited all of the Board's witnesses, while entirely discrediting the Company's witnesses. The ALJ's credibility determinations are, however, entitled to weight since he "sees the witnesses and hears them testify...." *NLRB v. Walton Manufacturing Co.,* 369 U.S. 404, 408, 82 S.Ct. 853, 855, 7 L.Ed.2d 829 (1962). While uniform crediting of one party's witnesses and discrediting of the opponent's witnesses, under circumstances suggestive of a closed mind, may "deprive [the ALJ's] credibility findings of the weight usually accorded them," *NLRB v. Miami Coca-Cola Bottling Co.,* 222 F.2d 341, 345 (5th Cir. 1955), we cannot say this is such a case.

The ALJ credited much of the Board's witnesses' testimony, but he also credited the entire testimony of a disinterested witness presented by the Company and portions of the testimony of the facility manager. The discredited testimony of the facility manager involved either inconsistencies within his testimony or the ALJ's adverse finding concerning his sincerity and demeanor. The ALJ discredited most of the testimony by the Company's other witness, the regional manager, because "in terms of his testimonial demeanor [he] did not impress me as being either a sincere or a reliable witness." It would be inappropriate for a court to overturn the Board's determination, which rests upon this credibility decision, particularly when supported by inconsistencies in the witness's testimony (*e.g.,* regarding when he decided to terminate Kneifel) and the implausibility of one of his explanations (*i.e.,* about the reasons behind his plan to replace plant employees).

*Petition for review denied and order enforced.*