Beatriz CAJIGAS, Plaintiff, Appellant,

v.

BANCO de PONCE, Defendant,
Appellee.

No. 83–1605.

United States Court of Appeals,
First Circuit.

Argued Feb. 8, 1984.

Decided Aug. 9, 1984.

Opinion on Denial of Rehearing and
Rehearing En Banc Oct. 10, 1984.

Jose E. Fernandez-Sein, Santurce, P.R., with whom Law Offices of Harvey B. Nachman, Santurce, P.R., was on brief, for plaintiff, appellant.

Jay A. Garcia Gregory, San Juan, P.R., with whom Juan Carlos Perez Otero, and Fiddler, Gonzalez & Rodriguez, San Juan, P.R., were on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, WISDOM,* Senior Circuit Judge, and BREYER, Circuit Judge.

PER CURIAM:

In this title VII[1] action the Plaintiff, Beatriz Cajigas, alleges that the defendant, Banco de Ponce, discriminated against her on account of her sex. The district court dismissed the complaint on the ground that Mrs. Cajigas had not filed administrative charges of discrimination within the statutory limitation period.[2] We reverse and remand.

## I.

In reviewing the district court's grant of summary judgment for the defendant, we must view the record in the light most favorable to the plaintiff and draw all rea-

---

* Of the Fifth Circuit, sitting by designation.

1. 42 U.S.C. §§ 2000e to 2000e–17 (1979). The complaint also alleged pendent state-law causes of action, but the district court dismissed the pendent claims in its Order of Feb. 25, 1982. The plaintiff does not challenge that ruling.

2. "A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ..., except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency." *Id.* § 2000e–5(e). We discuss below the question whether the 180–day limit or the 300–day limit applies in this case.

sonable inferences in favor of the plaintiff. *See, e.g., Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976); *Massaro v. Vernitron Corp.,* 559 F. Supp. 1068, 1073 (D.Mass.1983). Examined from such a perspective, the facts of this case are as follows:

In November 1978, Cajigas occupied the position of accountant in the Investment Division of the Banco de Ponce. At that time, she had worked for the bank for over four years and had been promoted twice. Her most recent promotion had been in December 1977, and since that time she had informed her superiors of her desire to be promoted to the position of manager. On November 22, 1978, the bank promoted a male co-worker, Mr. Sepulveda, to a manager's position within the Investment Division; on the same day the bank named Cajigas assistant manager of the Division.[3]

Unhappy that Sepulveda had been made a manager and that she had not, Cajigas complained to the bank official in charge of the Investment Division. This official told her that the bank did not want any women, particularly married women,[4] in a manager's position because the bank's clients preferred to deal with men at the executive level and because married women could not attend lunch and dinner meetings with clients and bank officials. In February 1979, a woman other than plaintiff was appointed as a manager in the investment department. Meanwhile and thereafter Cajigas complained to her supervisor "almost everyday"[5] about not being promoted. On March 27, 1979, she brought her complaint before higher bank officials. When the officials would not promote her to manager, she resigned.

Cajigas met with one of the bank's vice-presidents, Alfredo Arroyo, on June 21, 1979. Arroyo offered her a manager's position, but he refused to guarantee that she would receive compensation and promotion-al opportunities equal to those afforded male employees. Arroyo also refused to give her back pay dating from the time of Sepulveda's promotion. Because of those refusals, Cajigas did not accept the bank's offer.

On July 6, 1979, her attorney mailed a letter to the Equal Employment Opportunity Commission (EEOC) asserting that the Banco de Ponce had discriminated against Cajigas on the basis of her sex. On August 9, 1979, she filed a formal charge of discrimination with the Anti-Discrimination Unit (ADU) of the Puerto Rico Department of Labor and Human Resources, and she filed a formal charge with the EEOC on August 14. The ADU dismissed the charge on October 31, 1979. The EEOC terminated its evaluation of the charge and issued Cajigas a right-to-sue letter on September 2, 1980. She filed her complaint in the district court later that month.

The bank filed a motion for summary judgment on April 23, 1981. The district court granted this motion in part,[6] but rejected the argument that the action was barred by the applicable statute of limitations. Order of Feb. 25, 1982, Record vol. 1, doc. no. 33 (D.P.R.). On reconsideration of its partial denial of the motion, the district judge decided that the promotion of Sepulveda was the sole reason underlying the plaintiff's decision to resign on March 27, 1979; that the resignation, therefore, was a consequence of "that single discriminatory act"; and that "[t]he same [could] be said of the later offers of reemployment made by the defendant". Opinion and Order of July 8, 1983, Record vol. 1, doc. no. 41, at 6 (D.P.R.). Because Sepulveda's promotion occurred on November 22, 1978, the court held that the plaintiff's filings with the ADU and the EEOC on August 9, 1979, and August 14, 1979, respectively, were untimely. The court accordingly granted the defendant's motion for summary judg-

---

**3.** The effective date for both promotions was December 1, 1978.

**4.** Mrs. Cajigas was married at this time.

**5.** Deposition of Beatriz Cajigas, Record vol. 2, at 63 (filed Jan. 7, 1983).

**6.** *See* note 1.

ment and dismissed the complaint. This appeal followed.

## II.

The sole issue on appeal is whether Cajigas made a timely filing of administrative charges of discrimination. She raises a number of arguments in attacking the district court's holding that she did not file her charges within the relevant statutory period. Some of these arguments are irrelevant or have been waived; these we need not resolve. We address these arguments first. Then we discuss the plaintiff's remaining arguments.

## A.

The plaintiff presents three arguments whose merits we need not address.

*First.* The plaintiff's brief expends much effort arguing, and the defendant's brief disputing, the question whether Puerto Rico is a "deferral state"—that is, a state[7] having a state or local agency to which the EEOC must initially defer administrative action. In a deferral state, a plaintiff must file her charge of discrimination with the appropriate state agency within 240 days of the last act of unlawful discrimination.[8] In a nondeferral state, a plaintiff must file her charge with the EEOC within 180 days of the last act of unlawful discrimination. *See* 42 U.S.C. § 2000e-5(e) (1979). Cajigas argues that Puerto Rico is a deferral state and that the 240-day limit applies. The bank asserts

that the plaintiff never presented this argument below and therefore cannot raise it now. At this point, the issue need not be determined.[9] If, as the plaintiff argues, the defendant discriminated against her either up to her resignation on March 27, 1979, or in connection with the reemployment offer in June 1979, the plaintiff's filing with the EEOC meets the (shorter) 180-day limit for nondeferral states. If, as the district court held, the only act of illegal discrimination against the plaintiff was the defendant's promotion of Sepulveda on November 22, 1978, the plaintiff's filing with the ADU does not meet even the (longer) 240-day limit for deferral states. Thus, the deferral question is irrelevant at this point: The plaintiff's success on this appeal will be determined solely by her success in the arguments addressed in the next section of this opinion.

*Second.* Cajigas argues that the July 6, 1979, letter to the EEOC constitutes a "filing" for purposes of the statute of limitations. We decline to consider this argument. The plaintiff never filed this letter with the district court, and it is not part of the record. The plaintiff's pleadings and memoranda consistently refer to various dates between August 8 and August 14, 1979, as the EEOC filing date; they never mention the letter of July 6.[10] Because this argument was neither raised in nor considered by the district court, we shall not address it for the first time on

---

**7.** Title VII defines "state" to include Puerto Rico. *See* 42 U.S.C. § 2000e(i) (1979).

**8.** In a deferral state, the complainant must file a charge with the EEOC within 300 days after the alleged unlawful employment practice occurred. *Id.* § 2000e–5(e). In such a state, the EEOC must defer taking any action until 60 days have passed since a charge was filed with the state agency or until the state proceedings have terminated. *Id.* § 2000e–5(c). The Supreme Court has construed these two provisions to hold that, in a deferral state, a charge filed with the EEOC may not be considered "filed" for purposes of the 300–day limit until the state agency terminates its proceedings or until 60 days elapse after administrative proceedings have commenced under state law, whichever occurs first. *See Mohasco Corp. v. Silver,* 447 U.S. 807, 817, 100 S.Ct. 2486, 2492, 65 L.Ed.2d 532 (1980). Thus, a complainant in a deferral state must file the complaint with the state agency within 240 days to ensure a timely filing with the EEOC. A filing after 240 days and before 300 days may still be timely, but only if the state agency reach-

es its determination before the end of the 300–day period. *See Owens v. Ramsey Corp.,* 656 F.2d 340, 342 (8th Cir.1981). If the district court was correct in holding that the only alleged discriminatory act occurred on November 22, 1978, the filing with the ADU on August 9, 1979, would be past the 240–day limit and the ADU's termination of its proceedings on October 31 would be past the 300–day limit.

**9.** At any rate, the defendant's assertion is without merit. The district court considered the deferral issue in the court's first order denying summary judgment and in its later order granting summary judgment. *See* Order of Feb. 25, 1982, Record vol. 1, doc. no. 33, at 1–3 & n. 1 (D.P.R.); Opinion and Order of July 8, 1983, Record vol. 1, doc. no. 41, at 7 (D.P.R.). The issue is therefore appropriate for review on appeal.

**10.** *See* Opposition to Defendant's Motion for Reconsideration or for Certification Under 28 U.S.C. 1292(b), Record vol. 1, doc. no. 37, at 4

appeal. *See Greenwich Federal Savings & Loan Association v. Fidelity Bond & Mortgage Co.*, 714 F.2d 183, 184 (1st Cir. 1983); *Goldman v. Sears, Roebuck & Co.*, 607 F.2d 1014, 1017 & n.7 (1st Cir.1979), *cert. denied*, 445 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 762 (1980).

*Third.* Cajigas argues that there is evidence that she did not learn of Sepulveda's promotion until sometime in December 1978, and that the applicable statute of limitations did not commence until the plaintiff received notice of the promotion. Again, this argument was not considered by the district court, and therefore cannot be raised for the first time on appeal. In fact, the bank asserted in its motion for summary judgment and in an affidavit that the plaintiff was notified of Sepulveda's promotion on November 24. The plaintiff's memorandum in opposition to the motion does not controvert this fact, and indeed seems to accept it. The fact must therefore be accepted as true for the purposes of ruling on the motion for summary judgment. *See Melanson v. Caribou Reefers, Ltd.*, 667 F.2d 213, 214 (1st Cir.1981) (per curiam); *Morton v. Browne*, 438 F.2d 1205, 1206 (1st Cir.1971) (per curiam).[11]

### B.

In addition to the arguments discussed in Section A, the plaintiff asserts three reasons that the district court should not have granted the defendant's motion for summary judgment. First, Cajigas argues that the defendant committed an act of unlawful discrimination when, in June 1979, it refused to give her back pay and to guarantee equal treatment if she would return to work. Second, Cajigas argues that the applicable limitation period should be tolled because of her efforts to work out a voluntary conciliation with the defendant. Third, she argues that she was the victim of the defendant's discriminatory promotion policy, not only in November 1978 but also thereafter when defendant again refused to appoint her to available managerial positions for which she was qualified.[12] We reject the first two arguments, but agree with the third.

▪ The plaintiff's first two contentions can be quickly dismissed. First, Cajigas has not alleged any facts showing that the bank's refusal to offer equal pay and to guarantee equal promotional opportunities constituted different treatment from that afforded males in similar situations. There is no basis, therefore, for finding this action to be a violation in itself rather than a subsequent effect of the allegedly discriminatory failure to promote. *See United Airlines v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). The plaintiff's second argument is foreclosed by *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), which held squarely that "the pendency of a grievance, or some other method

(Apr. 23, 1982) (EEOC charges filed August 8); Opposition to Defendant's Motion for Reconsideration, Record vol. 1, doc. no. 32, at 2 (July 29, 1981) (EEOC charges filed August 11); Opposition to Motion for Summary Judgment, Record vol. 1, doc. no. 15, at 3 (May 11, 1981) (EEOC charges filed August 8); *id.* at 6 (EEOC charges filed August 14); Complaint, Record vol. 1, doc. no. 1, ¶ 27 (Sept. 23, 1980) (EEOC charges filed August 9).

**11.** *See also* D.P.R. R. 8N:

"Upon any motion for summary judgment there shall be annexed to the motion a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried. *All material facts set forth in the statement required to be served by the moving party will be deemed to be admit-*

*ted unless controverted by the opposing party."* (emphasis added).

**12.** The defendant is apparently of the view that the plaintiff cannot make this argument now because she did not allege it in her complaint. That view misconstrues the purpose of the complaint in federal litigation. Under the concept of notice pleading, a complaint need not clearly articulate the precise legal theories upon which the plaintiff bases her right to recovery. The complaint must simply " 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests' ". *Baldwin County Welcome Center v. Brown*, ___ U.S. ___, ___ n. 3, 104 S.Ct. 1723, 1725 n. 3, 80 L.Ed.2d 196 (1984) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). The plaintiff in the present case put her continuing violation theory before the district court when the court considered the defendant's motions for summary judgment. That is sufficient to enable the plaintiff to argue that theory on appeal.

of collateral review of an employment decision, does not toll the running of the limitations period". *Id.* at 261, 101 S.Ct. at 505.

■ According to Cajigas, the bank maintained a policy of discriminating against women, especially married ones, with regard to promotions to executive positions. Cajigas asserts that, from December 1977 until the day of her resignation, she attempted to obtain a promotion to manager but was denied one because of the discriminatory policy. That another woman was made a manager in February 1979 and that plaintiff was offered a position as manager in June 1979 are some indication that manager positions were open. She contends that this policy was a continuing violation of title VII, and that it operated against her until she resigned. Thus, she concludes, the statutory time limitation began to run with her resignation on March · 27, 1979. The bank argues in response that, as the district court held, the only act of alleged unlawful discrimination of which the plaintiff complains is the promotion in November 1978 of Sepulveda rather than the plaintiff. Her failure to obtain a promotion during the following four months and her eventual resignation were, according to the bank, only continuing *effects* of the promotion of Sepulveda. On this record, plaintiff's theory is plausible, and thus, at this preliminary stage, we must reject defendant's argument.

As the defendant observes, a court evaluating a "continuing violation" argument must distinguish between a continuing violation and the continuing effects of a prior, yet discrete and no longer existent, discriminatory act. This lesson is taught primarily by two decisions of the Supreme Court: *United Airlines v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), and *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). In *Evans* the plaintiff, a female flight attendant, was grounded in 1968 because of the defendant airline's "no marriage" policy, a policy later found discriminatory in a lawsuit brought by other female flight attendants. United rehired Evans in 1972 but, in conformity with the airline's seniority system, refused to credit her with the seniority that had accrued to her before 1968. Evans filed a charge with the EEOC in February 1973. The Supreme Court held this filing untimely, rejecting the plaintiff's argument that the defendant had engaged in continuing discrimination by refusing to credit the plaintiff for pre-1968 seniority:

"Respondent emphasizes the fact that she 'has alleged a *continuing* violation. United's seniority system does indeed have an impact on her pay and fringe benefits. But the emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists."

431 U.S. at 558, 97 S.Ct. at 1889. Because United's seniority system operated in a facially neutral manner, the Court concluded that there was no present violation.

The plaintiff in *Ricks* was a foreign black professor whom the defendant university denied tenure in March 1974, allegedly for discriminatory reasons. In accordance with its usual procedure, the university offered Ricks a one-year "terminal" contract, which was to expire in June 1975. Ricks accepted the offer.. In April 1975, he filed a charge of discrimination with the EEOC. The Supreme Court held that this filing was not timely. It reasoned that the denial of tenure was the only act of alleged discrimination, and that the eventual termination of employment was "a delayed, but inevitable, consequence of the denial of tenure". 449 U.S. at 257–58, 101 S.Ct. at 503–04. The Court stressed that the proper focus is upon the time of the discriminatory *act,* not the time at which the consequences of that act are felt. *Id.* at 258, 101 S.Ct. at 504; *accord Chardon v. Fernandez,* 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1980) (per curiam).

The district court brought the present case within the doctrine of *Evans* and *Ricks* by concluding that the plaintiff's resignation on March 27, 1979, was a consequence of the defendant's promotion of Sepulveda rather than the plaintiff on November 22, 1978. We disagree. Were it the case that Sepulveda's promotion foreclosed plaintiff from being promoted—say, had Sepulveda secured the only available opening as manager and there simply were no manager positions available either on March 27, 1979 when plaintiff met with management and, before resigning, once again urged her promotion or at some earlier point within the limitations period preceeding plaintiff's August filing—then the failure of plaintiff to receive a promotion after November 22, 1978 would in fact be merely the result of the prior act of alleged discrimination, and *Ricks* and *Evans* would

apply. But, there are indications in the record that other slots may have been open during the limitations period—such as the one another woman filled at some point in February 1979—or that promotion was not necessarily dependent upon a vacancy being created by another's departure but rather could be bestowed upon meritorious performance. Thus, on the present record, we cannot say plaintiff's action is foreclosed by *Evans.*

As did the district court, the defendants rely heavily on *Goldman v. Sears Roebuck & Co.,* 607 F.2d 1014 (1st Cir.1979), *cert. denied,* 445 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 762 (1980). In *Goldman,* the plaintiff had been demoted to a lower-paying position in 1975. He filed a charge of discrimination with the EEOC in July 1976. In opposition to a motion to dismiss because of untimely filing, the plaintiff argued that during 1976 he had made repeated requests to be transferred back to his former position. The Court of Appeals held that this allegation did not save the plaintiff's suit. *Goldman* does not undermine the plaintiff's position, for deficiencies present in *Goldman* are absent here. In *Goldman,* it had not been alleged when the refusals to retransfer occurred or whether any position had been open when the refusals were made. 607 F.2d at 1018–1019. Here, in contrast, there is some indication that positions as manager were open in February and March when plaintiff continued to press for promotion, and thus plaintiff's action is timely with respect to at least the alleged discriminatory refusal to promote plaintiff to an available executive position for which she was qualified occurring within 180 (or 240, as the case may be—we leave the matter to be determined in the first instance by the district court) days of the filing of her administrative complaint.

The harder question is whether plaintiff may continue to litigate with respect to actions occurring outside the 180 or 240 day limitations period. This circuit has yet to rule squarely on this issue, and we prefer not to do so in the absence of a concrete factual situation. Had plaintiff ceased her employment in November 1978 after Sepulveda, rather than she, was named manager but had not filed her complaint until August, it would be clear her action would not be timely as to the November event. Why plaintiff's continued employment and subsequent denial of promotion should make the November event now actionable is questionable, and at least one member of the panel doubts whether the "continuing violation" theory should operate to allow recovery with respect to a distinct act of discrimination taking place at an identifiable point of time outside the limitations period.[13] It may be that the continuing violation theory is more appropriately limited to a situation where there is no single act of discrimination sufficient to trigger the running of the limitations period. *See generally Valles Velazquez v. Chardon,* 736 F.2d 831 at 833 (1st Cir.1984) (discussing continuing violation theory). Possibly such a situation might occur were promotions not made necessarily in the context of competition for a specific slot vacant by reason of say death or resignation, but rather were bestowed irregularly from time to time based on meritorious performance and, though it would be difficult to pinpoint any particular date at which advancement should have occurred, after the passage of time it becomes apparent that plaintiff, due to discrimination, is not on the same promotion track as others.

Where in the continuum the present case fits we do not know. The record is not sufficiently developed, and the parties have not sufficiently focused on the matter. Because, as we have concluded, plaintiff's action is timely at least with respect to the allegedly discriminatory refusal to promote her in March, the judgment of dismissal must be reversed and the case remanded. On remand, the parties will have a further opportunity to argue the appropriate contours of plaintiff's action.

· *Reversed and remanded.*

### MEMORANDUM AND ORDER

#### On Rehearing

In moving for rehearing, appellee argues the present record would not support a finding either that managerial positions for which plaintiff was qualified were open or that, despite the absence of an open slot, promotion during that period was still possible. The record is murky with respect to these matters, for, in moving for summary judgment, appellee did not directly focus on

---

**13.** This does not mean the November event is irrelevant. At a minimum, "[i]t may constitute relevant background evidence ...." *United Air*

*Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). *Cf. Rikal, Inc. v. NLRB,* 721 F.2d 402 (1st Cir.1983) (de-

them. Yet, whether other managerial slots for which plaintiff was qualified were open or whether, absent a vacancy, a promotion might nevertheless be bestowed due to, say, meritorious performance were issues material to the question whether plaintiff's action was timely. It was appellee's burden in moving for summary judgment to show that no genuine issue of material fact with respect to timeliness existed. This appellee did not do and consequently we vacated the summary judgment. In so doing we of course did not resolve this factual issue one way or the other.

Appellee also argues that even if plaintiff's action is timely, the evidence is insufficient to establish sex discrimination. The district court granted summary judgment on timeliness grounds. It did not rule on the substantive merit of plaintiff's case, and hence, on appeal, we do not do so. Appellee's substantive arguments should be considered in the first instance by the district court. Vacation of the summary judgment in no way reflects our determination one way or the other.

*Motion for rehearing denied.*

See also 555 F.Supp. 1366.

funct unfair labor practice may not be revived in a later case, but may be utilized if relevant to

shed light on later event).