August 4, 1993 UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1943

WANDWOSSEN KASSAYE,

Plaintiff, Appellant,

v.

BRYANT COLLEGE, ET AL.,

Defendants, Appellees.

ERRATA SHEET

The opinion of this Court issued on August 3, 1993, is
amended as follows:

On page 10, line 2 of first full paragraph, replace
"indictating" with "indicating".

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1943

WANDWOSSEN KASSAYE,

Plaintiff, Appellant,

v.

BRYANT COLLEGE, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Francis J. Boyle, U.S. District Judge]

Before

Boudin, Circuit Judge,

Campbell, Senior Circuit Judge,

and Stahl, Circuit Judge.

Peter Antell with whom J. Daniel Lindley and Antell & Associates

were on brief for appellant.
Patricia K. Rocha with whom Adler Pollock & Sheehan Incorporated

was on brief for appellees.

August 2, 1993

CAMPBELL, Senior Circuit Judge. This appeal

concerns the limitations period for filing employment

discrimination charges under Title VII. Appellant Wandwossen

Kassaye was employed since 1986 as an associate professor of

marketing by Bryant College, a private institution in Rhode

Island. Kassaye is a black male and a United States national

born in Ethiopia. In 1988, Kassaye applied for and was

denied tenure by Bryant. Nevertheless, Bryant reappointed

Kassaye as an associate professor for the 1989-1990 academic

year. He reapplied for tenure in August 1989. College

officials informed Kassaye in writing on December 18, 1989,

that he would not be granted tenure. On January 20, 1990,

appellee William E. Trueheart, president of Bryant College,

officially confirmed the tenure denial and notified Kassaye

that his employment would end on July 31, 1990.

Kassaye continued teaching at Bryant through the

spring semester. On June 8, 1990, the marketing department

chairman, appellee Frank Bingham, sent Kassaye the following

memorandum:

Please make arrangements to vacate your
office no later than July 1, 1990. The

office has been assigned to another
faculty member who will be moving in on
July 1, thus the reason for this request.
If this presents a problem, please advise
as I am willing to do one of the
following:

* Have Maintenance pack your
books, etc. in cartons and
store in a secure space

-3-

* Try to find a temporary space
for your belongings, which will
give you the option of packing
the books, etc. yourself. This
will be difficult (maybe
impossible) but I will do my
best if requested

These "options" should not be necessary
as the July 1 date is a full three weeks
away giving you ample opportunity to pack
and move. Thank you for your
cooperation.

Kassaye protested the request to vacate his office before the

expiration of his contract. In a June 26, 1990, memo to

appellee James W. Robinson, vice president for academic

affairs, Kassaye wrote:

I understand my contract expires on July
31, 1900. [sic] Until then, I continue
to honor my contractual obligations to
the College and perform my committee
duties as required. In that spirit, I
have attended the CCAS interview sessions
earlier this month.

Needless to say, I strongly protest the
request to vacate the office before July
31. I find the action a breach of
contact [sic], and further testimony to
the continued harassment I'm being
subjected to. I think what was done is
unprofessional and detestable.

On July 2, 1990, Bingham again wrote to Kassaye:

I regret that you will not vacate your
office as I requested. Although the
office is needed badly to accommodate
several moves, I will honor your request
to remain until July 31.

Although I recognize that you have
negative feelings about being denied
tenure, your failure to accommodate this
move inconveniences only persons who were

-4-

not even Bryant employees when it
happened.

Kassaye retained access to his office until the last day of

his employment, July 31, 1990.

On November 19, 1990, Kassaye filed a charge of

discrimination with the Rhode Island Commission for Human

Rights ("RICHR"), alleging that Bryant College discriminated

against him on the basis of his race, color and national

origin. Kassaye is automatically deemed to have filed the

same charge with the Equal Employment Opportunity Commission

("EEOC") on January 18, 1991, sixty days after he filed the

RICHR charge. See 29 C.F.R. 1601.13(b).

The RICHR and the EEOC issued right-to-sue letters

in July and October 1991, respectively, and Kassaye filed

this civil action for injunctive and monetary relief in the

United States District Court for the District of Rhode Island

on October 16, 1991. The complaint alleged that Bryant

College and college administrators William E. Trueheart,

James W. Robinson, Michael B. Patterson, and Frank Bingham

violated section 703(a)(1) of Title VII of the Civil Rights

Act of 1964, 42 U.S.C. 2000e-2(a)(1) "by denying his tenure

and thereby terminating his employment" because of his race,

color and national origin. The complaint also alleged that

-5-

the tenure denial constituted, under Rhode Island law,

tortious conduct and breach of contract.1

The district court granted summary judgment for

defendants on the Title VII claims on the ground that Kassaye

did not file his charge of discrimination with the EEOC

within the 300-day limitations period set out in 42 U.S.C.

2000e-5(e). Lacking any other basis for federal

jurisdiction, the district court dismissed the pendant state

law claims. See Newman v. Burgin, 930 F.2d 955, 963 (1st

Cir. 1991).

On appeal, Kassaye disputes the district court's

conclusion that his EEOC charge was untimely filed. 42

U.S.C. 2000e-5(e) defines the limitations period for

charges of unlawful employment practices:

A charge under this section shall be
filed [with the EEOC] within one hundred
and eighty days after the alleged
unlawful employment practice occurred
. . . , except that in a case of an
unlawful employment practice with respect
to which the person aggrieved has
initially instituted proceedings with a
State or local agency with authority to
grant or seek relief from such practice
. . . , such charge shall be filed by or
on behalf of the person aggrieved within

1. The complaint was amended once to add a copy of the EEOC
right-to-sue letter. The amended complaint is referred to
herein as "the complaint."

-6-

three hundred days after the alleged
unlawfulemployment
practiceoccurred. . . .2

It is undisputed that the 300-day limitations period applied

here,3 and that the filing date of Kassaye's charge for EEOC

purposes was January 18, 1991. It is also undisputed that

Kassaye received actual notice of the tenure denial, at the

latest, by January 20, 1990.4 Thus, Kassaye's EEOC charge

was timely only if "the alleged unlawful employment practice"

2. This portion of 42 U.S.C. 2000e-5(e) is now designated
as paragraph (1). See Civil Rights Act of 1991, Pub. L. No.

102-166, Title I, 112, 105 Stat. 1071, 1078-79 (1991). The
redesignation of this text and the addition of new paragraph
(2), concerning seniority systems, do not affect the outcome
of appellant's case.

3. All parties assume as the EEOC itself has declared
that Rhode Island is a deferral state for purposes of Title
VII, and thus that the 300-day period applies here. See 29

C.F.R. 1601.70(a), 1601.74(a). A deferral state is one
with an "agency with authority to grant or seek relief from
such [unlawful employment] practice[s]." 42 U.S.C. 2000e-
5(e). In a deferral state, the EEOC defers consideration of
a discrimination charge until the appropriate state agency
has had up to sixty days to act on the charge. Id.; 29

C.F.R. 1601.13(a)(3)-(4), (b). If the aggrieved person
files a claim first with a state or local agency in a
deferral state, he has 300 days, instead of 180 days, to file
a charge with the EEOC. 42 U.S.C. 2000e-5(e); Cajigas v.

Banco de Ponce, 741 F.2d 464, 467 n.8 (1st Cir. 1984). Given

the parties' agreement that Rhode Island is a deferral state,
we need not resolve the issue ourselves, but simply proceed
on that assumption. Compare, e.g., Cajigas, 741 F.2d at 467;

Goldman v. Sears, Roebuck & Co., 607 F.2d 1014, 1017 (1st

Cir. 1979).

4. It is possible that Kassaye received final notice on
December 18, 1989, when the vice president of academic
affairs notified him of the tenure decision by memo. We need
not determine whether adequate notice was received on that
earlier date, however, since even if the limitations period
did not commence until January 20, 1990, the EEOC charge was
still out of time.

-7-

occurred within 300 days before January 18, 1991. Kassaye

concedes that if, as the district court held, the gravamen of

his complaint was the tenure denial, his charge was filed too

late because it was not filed until 363 days after January

20, 1990. See Delaware State College v. Ricks, 449 U.S. 250,

258 (1980) (holding that the limitations period for a

discrimination charge based on tenure denial begins when

aggrieved person receives notice of denial, not on the last

day of employment).

Kassaye's administratively-filed discrimination

charge, and his subsequent civil complaint filed in the

district court, centered upon the denial of tenure. Only

after defendants raised the limitations problem in the

district court, in their motion for summary judgment, did

Kassaye put forward his current theory: that there was a

continuing violation of Title VII that ended within the 300-

day limitations period.5 If a Title VII violation is of a

5. Appellees do not contest appellant's right to do so, so
we shall assume without deciding that appellant was not
precluded from raising the continuing violation theory in his
opposition to summary judgment. See Cajigas v. Banco de

Ponce, 741 F.2d 464, 468 n.12 (1st Cir. 1984). But see Mack

v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 183-84 (1st Cir.

1989) (warning future litigants that the continuing violation
theory should be spelled out clearly in their complaints).
It is nonetheless noteworthy that the June 8th memo was
neither emphasized nor discussed in appellant's original
discrimination charge and complaint. See Ricks, 449 U.S. at

257 n.8. Appellant wrote on the form filed with the RICHR
that the most recent act of discrimination took place on
January 20, 1990 the date he received official notice of
the tenure denial. His description of the alleged

-8-

continuing nature, the charge of discrimination filed with

the appropriate agency may be timely as to all discriminatory

acts encompassed by the violation so long as the charge is

filed during the life of the violation or within the

statutory period (e.g., 300 days) which commences upon the

violation's termination. Mack v. Great Atl. & Pac. Tea Co.,

871 F.2d 179, 183 (1st Cir. 1989); Cajigas v. Banco de Ponce,

741 F.2d 464, 469 (1st Cir. 1984); Goldman v. Sears, Roebuck

& Co., 607 F.2d 1014, 1018 (1st Cir. 1979).

There are two kinds of continuing violations:

systemic and serial. Jensen v. Frank, 912 F.2d 517, 522 (1st

Cir. 1990). Kassaye does not assert that what happened here

fits within the former definition. What Kassaye now argues

is that the record discloses a series of discriminatory acts,

beginning at a time unspecified and ending on June 8, 1990,

when Bingham asked him to vacate his office. These acts,

said to constitute harassment of Kassaye on the basis of his

race, color and national origin, included assigning him to

teach a class he did not wish to teach, relying on the

evaluations of white peers and students in making tenure

discrimination, in both the charge form and his complaint,
focused almost exclusively on the details of the tenure
denial. Only one sentence on his discrimination charge form
mentioned the request that he vacate his office a month
early. The complaint did not even allege that the June 8th
incident occurred, but merely referred to the discrimination
charge form which itself only mentioned the memo as an
exhibit.

-9-

decisions, denying him tenure, and asking him to vacate his

office. Because the last of these purported serial acts

occurred on June 8, 1990, Kassaye contends that the EEOC

charge was filed during the 300-day limitations period, viz.,

224 days after June 8, 1990.

A serial violation is described as "a number of

discriminatory acts emanating from the same discriminatory

animus, each act constituting a separate wrong actionable

under Title VII." Sabree v. United Bhd. of Carpenters Local

33, 921 F.2d 396, 400 (1st Cir. 1990) (quoting Jensen, 912

F.2d at 522). The mere effects or consequences of past

discrimination, as opposed to independently actionable

violations of Title VII, are insufficient to serve as the

trigger of the limitations period. Ricks, 449 U.S. at 258;

United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977);

Goldman, 607 F.2d at 1018. "[T]he critical question is

whether any present violation exists." Evans, 431 U.S. at

558 (emphasis in original).

The only one of this series of alleged harassing

acts that occurred within the limitations period was the June

8, 1990, request for appellant to move out of his office

prior to the termination of his contract. For appellant's

continuing violation theory to succeed, that incident must

have constituted an independently actionable discriminatory

-10-

act, and not have been merely a consequence of the earlier

tenure denial. Mack, 871 F.2d at 183.

We do not think that Kassaye has raised a genuine

issue of material fact as to whether the June 8 incident was

an actionable Title VII violation. The ultimate question in

any Title VII claim is whether the defendant's alleged

conduct was discriminatory. St. Mary's Honor Ctr. v. Hicks,

No. 92-602, 61 U.S.L.W. 4782, 4786 (U.S. June 25, 1993);

Goldman, 607 F.2d at 1019. However, nothing in this record

suggests, directly or indirectly, that the request to move

was discriminatory. The request was not on its face

unreasonable, given the unrebutted need to accommodate other

faculty members who were staying on. There is no evidence

that, by asking Kassaye to vacate his office on July 1,

Bingham was treating Kassaye any differently from the way he

had, or would have, treated other non-black and non-Ethiopian

professors who had been denied tenure. See, e.g., Mack, 871

F.2d at 182 (affirming summary judgment dismissal of

discrimination claim where plaintiff offered no evidence that

similarly situated, male employees were treated more

favorably than she); Cajigas, 741 F.2d at 468 (dismissing

claim because plaintiff failed to allege that employer's

refusal to offer equal pay and promotions to her constituted

different treatment from that afforded males in similar

situations); Underwood v. Digital Equip. Corp., 576 F. Supp.

-11-

213, 216 (D. Mass. 1983) (dismissing claim where plaintiff

did not allege that his former employer treated him

differently from the way in which it treated other former

employees).

Kassaye's assertions to the contrary are not

substitutes for concrete evidentiary materials indicating

differential treatment. August v. Offices Unlimited, Inc.

981 F.2d 576, 580 (1st Cir. 1992). The only record evidence

regarding the office incident are the three memos reproduced

in full supra, showing simply that Kassaye was asked to leave

his office a month before his contract expired in order to

permit another faculty member to move in. When Kassaye

refused to move, he was told he could stay until his contract

ran out. The request to move had been politely phrased and

was accompanied by a stated willingness to take certain steps

helpful to Kassaye if moving out presented a problem. In his

subsequent letter honoring Kassaye's request to stay until

July 31, Bingham spoke of needing the office "badly to

accommodate several moves." While Kassaye viewed the request

as "unprofessional and detestable," we are unable to see that

the mere making of it provided grounds for an inference of

discrimination. Asking a teacher whose contract was about to

expire to vacate his office a few weeks early in favor of

someone who would be teaching next fall was a mere effect of

the past, allegedly discriminatory, act of refusing to renew

-12-

appellant's employment at Bryant College. It was the latter,

if anything, which provided grounds for complaint.

Because the events of June 8, 1990 did not

constitute an actionable violation of Title VII, there was no

continuing violation extending into the 300-day limitations

period. The district court correctly held that appellant's

EEOC charge was not timely filed. Because we affirm the

district court's dismissal of Kassaye's complaint on the

limitations ground,the other issuesraised by Kassayeare moot.

Affirmed. Costs to appellees.

-13-