USCA1 Opinion

 

 August 4, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1943 WANDWOSSEN KASSAYE, Plaintiff, Appellant, v. BRYANT COLLEGE, ET AL., Defendants, Appellees. ____________________ ERRATA SHEET The opinion of this Court issued on August 3, 1993, is amended as follows: On page 10, line 2 of first full paragraph, replace "indictating" with "indicating". UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1943 WANDWOSSEN KASSAYE, Plaintiff, Appellant, v. BRYANT COLLEGE, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Francis J. Boyle, U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Peter Antell with whom J. Daniel Lindley and Antell & Associates ____________ __________________ ____________________ were on brief for appellant. Patricia K. Rocha with whom Adler Pollock & Sheehan Incorporated _________________ _____________________________________ was on brief for appellees. ____________________ August 2, 1993 ____________________ CAMPBELL, Senior Circuit Judge. This appeal ______________________ concerns the limitations period for filing employment discrimination charges under Title VII. Appellant Wandwossen Kassaye was employed since 1986 as an associate professor of marketing by Bryant College, a private institution in Rhode Island. Kassaye is a black male and a United States national born in Ethiopia. In 1988, Kassaye applied for and was denied tenure by Bryant. Nevertheless, Bryant reappointed Kassaye as an associate professor for the 1989-1990 academic year. He reapplied for tenure in August 1989. College officials informed Kassaye in writing on December 18, 1989, that he would not be granted tenure. On January 20, 1990, appellee William E. Trueheart, president of Bryant College, officially confirmed the tenure denial and notified Kassaye that his employment would end on July 31, 1990. Kassaye continued teaching at Bryant through the spring semester. On June 8, 1990, the marketing department chairman, appellee Frank Bingham, sent Kassaye the following memorandum: Please make arrangements to vacate your office no later than July 1, 1990. The ______________ office has been assigned to another faculty member who will be moving in on July 1, thus the reason for this request. If this presents a problem, please advise as I am willing to do one of the following: * Have Maintenance pack your books, etc. in cartons and store in a secure space -3- * Try to find a temporary space for your belongings, which will give you the option of packing the books, etc. yourself. This will be difficult (maybe impossible) but I will do my best if requested These "options" should not be necessary as the July 1 date is a full three weeks away giving you ample opportunity to pack and move. Thank you for your cooperation. Kassaye protested the request to vacate his office before the expiration of his contract. In a June 26, 1990, memo to appellee James W. Robinson, vice president for academic affairs, Kassaye wrote: I understand my contract expires on July 31, 1900. [sic] Until then, I continue to honor my contractual obligations to the College and perform my committee duties as required. In that spirit, I have attended the CCAS interview sessions earlier this month. Needless to say, I strongly protest the request to vacate the office before July 31. I find the action a breach of contact [sic], and further testimony to the continued harassment I'm being subjected to. I think what was done is unprofessional and detestable. On July 2, 1990, Bingham again wrote to Kassaye: I regret that you will not vacate your office as I requested. Although the office is needed badly to accommodate several moves, I will honor your request to remain until July 31. Although I recognize that you have negative feelings about being denied tenure, your failure to accommodate this move inconveniences only persons who were -4- not even Bryant employees when it happened. Kassaye retained access to his office until the last day of his employment, July 31, 1990. On November 19, 1990, Kassaye filed a charge of discrimination with the Rhode Island Commission for Human Rights ("RICHR"), alleging that Bryant College discriminated against him on the basis of his race, color and national origin. Kassaye is automatically deemed to have filed the same charge with the Equal Employment Opportunity Commission ("EEOC") on January 18, 1991, sixty days after he filed the RICHR charge. See 29 C.F.R. 1601.13(b). ___ The RICHR and the EEOC issued right-to-sue letters in July and October 1991, respectively, and Kassaye filed this civil action for injunctive and monetary relief in the United States District Court for the District of Rhode Island on October 16, 1991. The complaint alleged that Bryant College and college administrators William E. Trueheart, James W. Robinson, Michael B. Patterson, and Frank Bingham violated section 703(a)(1) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2(a)(1) "by denying his tenure and thereby terminating his employment" because of his race, color and national origin. The complaint also alleged that -5- the tenure denial constituted, under Rhode Island law, tortious conduct and breach of contract.1 The district court granted summary judgment for defendants on the Title VII claims on the ground that Kassaye did not file his charge of discrimination with the EEOC within the 300-day limitations period set out in 42 U.S.C. 2000e-5(e). Lacking any other basis for federal jurisdiction, the district court dismissed the pendant state law claims. See Newman v. Burgin, 930 F.2d 955, 963 (1st ___ ______ ______ Cir. 1991). On appeal, Kassaye disputes the district court's conclusion that his EEOC charge was untimely filed. 42 U.S.C. 2000e-5(e) defines the limitations period for charges of unlawful employment practices: A charge under this section shall be filed [with the EEOC] within one hundred and eighty days after the alleged unlawful employment practice occurred . . . , except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . , such charge shall be filed by or on behalf of the person aggrieved within ____________________ 1. The complaint was amended once to add a copy of the EEOC right-to-sue letter. The amended complaint is referred to herein as "the complaint." -6- three hundred days after the alleged unlawfulemployment practiceoccurred. . . .2 It is undisputed that the 300-day limitations period applied here,3 and that the filing date of Kassaye's charge for EEOC purposes was January 18, 1991. It is also undisputed that Kassaye received actual notice of the tenure denial, at the latest, by January 20, 1990.4 Thus, Kassaye's EEOC charge was timely only if "the alleged unlawful employment practice" ____________________ 2. This portion of 42 U.S.C. 2000e-5(e) is now designated as paragraph (1). See Civil Rights Act of 1991, Pub. L. No. ___ 102-166, Title I, 112, 105 Stat. 1071, 1078-79 (1991). The redesignation of this text and the addition of new paragraph (2), concerning seniority systems, do not affect the outcome of appellant's case. 3. All parties assume as the EEOC itself has declared that Rhode Island is a deferral state for purposes of Title VII, and thus that the 300-day period applies here. See 29 ___ C.F.R. 1601.70(a), 1601.74(a). A deferral state is one with an "agency with authority to grant or seek relief from such [unlawful employment] practice[s]." 42 U.S.C. 2000e- 5(e). In a deferral state, the EEOC defers consideration of a discrimination charge until the appropriate state agency has had up to sixty days to act on the charge. Id.; 29 ___ C.F.R. 1601.13(a)(3)-(4), (b). If the aggrieved person files a claim first with a state or local agency in a deferral state, he has 300 days, instead of 180 days, to file a charge with the EEOC. 42 U.S.C. 2000e-5(e); Cajigas v. _______ Banco de Ponce, 741 F.2d 464, 467 n.8 (1st Cir. 1984). Given ______________ the parties' agreement that Rhode Island is a deferral state, we need not resolve the issue ourselves, but simply proceed on that assumption. Compare, e.g., Cajigas, 741 F.2d at 467; _______ ____ _______ Goldman v. Sears, Roebuck & Co., 607 F.2d 1014, 1017 (1st _______ ______________________ Cir. 1979). 4. It is possible that Kassaye received final notice on December 18, 1989, when the vice president of academic affairs notified him of the tenure decision by memo. We need not determine whether adequate notice was received on that earlier date, however, since even if the limitations period did not commence until January 20, 1990, the EEOC charge was still out of time. -7- occurred within 300 days before January 18, 1991. Kassaye concedes that if, as the district court held, the gravamen of his complaint was the tenure denial, his charge was filed too late because it was not filed until 363 days after January 20, 1990. See Delaware State College v. Ricks, 449 U.S. 250, ___ ______________________ _____ 258 (1980) (holding that the limitations period for a discrimination charge based on tenure denial begins when aggrieved person receives notice of denial, not on the last day of employment). Kassaye's administratively-filed discrimination charge, and his subsequent civil complaint filed in the district court, centered upon the denial of tenure. Only after defendants raised the limitations problem in the district court, in their motion for summary judgment, did Kassaye put forward his current theory: that there was a continuing violation of Title VII that ended within the 300- day limitations period.5 If a Title VII violation is of a ____________________ 5. Appellees do not contest appellant's right to do so, so we shall assume without deciding that appellant was not precluded from raising the continuing violation theory in his opposition to summary judgment. See Cajigas v. Banco de ___ _______ ________ Ponce, 741 F.2d 464, 468 n.12 (1st Cir. 1984). But see Mack _____ _______ ____ v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 183-84 (1st Cir. _________________________ 1989) (warning future litigants that the continuing violation theory should be spelled out clearly in their complaints). It is nonetheless noteworthy that the June 8th memo was neither emphasized nor discussed in appellant's original discrimination charge and complaint. See Ricks, 449 U.S. at ___ _____ 257 n.8. Appellant wrote on the form filed with the RICHR that the most recent act of discrimination took place on January 20, 1990 the date he received official notice of the tenure denial. His description of the alleged -8- continuing nature, the charge of discrimination filed with the appropriate agency may be timely as to all discriminatory acts encompassed by the violation so long as the charge is filed during the life of the violation or within the statutory period (e.g., 300 days) which commences upon the violation's termination. Mack v. Great Atl. & Pac. Tea Co., ____ _________________________ 871 F.2d 179, 183 (1st Cir. 1989); Cajigas v. Banco de Ponce, _______ ______________ 741 F.2d 464, 469 (1st Cir. 1984); Goldman v. Sears, Roebuck _______ ______________ & Co., 607 F.2d 1014, 1018 (1st Cir. 1979). _____ There are two kinds of continuing violations: systemic and serial. Jensen v. Frank, 912 F.2d 517, 522 (1st ______ _____ Cir. 1990). Kassaye does not assert that what happened here fits within the former definition. What Kassaye now argues is that the record discloses a series of discriminatory acts, ______ beginning at a time unspecified and ending on June 8, 1990, when Bingham asked him to vacate his office. These acts, said to constitute harassment of Kassaye on the basis of his race, color and national origin, included assigning him to teach a class he did not wish to teach, relying on the evaluations of white peers and students in making tenure ____________________ discrimination, in both the charge form and his complaint, focused almost exclusively on the details of the tenure denial. Only one sentence on his discrimination charge form mentioned the request that he vacate his office a month early. The complaint did not even allege that the June 8th incident occurred, but merely referred to the discrimination charge form which itself only mentioned the memo as an exhibit. -9- decisions, denying him tenure, and asking him to vacate his office. Because the last of these purported serial acts occurred on June 8, 1990, Kassaye contends that the EEOC charge was filed during the 300-day limitations period, viz., 224 days after June 8, 1990. A serial violation is described as "a number of discriminatory acts emanating from the same discriminatory animus, each act constituting a separate wrong actionable under Title VII." Sabree v. United Bhd. of Carpenters Local ______ _______________________________ 33, 921 F.2d 396, 400 (1st Cir. 1990) (quoting Jensen, 912 __ ______ F.2d at 522). The mere effects or consequences of past discrimination, as opposed to independently actionable violations of Title VII, are insufficient to serve as the trigger of the limitations period. Ricks, 449 U.S. at 258; _____ United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977); _______________________ _____ Goldman, 607 F.2d at 1018. "[T]he critical question is _______ whether any present violation exists." Evans, 431 U.S. at _________ _____ 558 (emphasis in original). The only one of this series of alleged harassing acts that occurred within the limitations period was the June 8, 1990, request for appellant to move out of his office prior to the termination of his contract. For appellant's continuing violation theory to succeed, that incident must have constituted an independently actionable discriminatory -10- act, and not have been merely a consequence of the earlier tenure denial. Mack, 871 F.2d at 183. ____ We do not think that Kassaye has raised a genuine issue of material fact as to whether the June 8 incident was an actionable Title VII violation. The ultimate question in any Title VII claim is whether the defendant's alleged conduct was discriminatory. St. Mary's Honor Ctr. v. Hicks, _____________________ _____ No. 92-602, 61 U.S.L.W. 4782, 4786 (U.S. June 25, 1993); Goldman, 607 F.2d at 1019. However, nothing in this record _______ suggests, directly or indirectly, that the request to move was discriminatory. The request was not on its face unreasonable, given the unrebutted need to accommodate other faculty members who were staying on. There is no evidence that, by asking Kassaye to vacate his office on July 1, Bingham was treating Kassaye any differently from the way he had, or would have, treated other non-black and non-Ethiopian professors who had been denied tenure. See, e.g., Mack, 871 ___ ____ ____ F.2d at 182 (affirming summary judgment dismissal of discrimination claim where plaintiff offered no evidence that similarly situated, male employees were treated more favorably than she); Cajigas, 741 F.2d at 468 (dismissing _______ claim because plaintiff failed to allege that employer's refusal to offer equal pay and promotions to her constituted different treatment from that afforded males in similar situations); Underwood v. Digital Equip. Corp., 576 F. Supp. _________ _____________________ -11- 213, 216 (D. Mass. 1983) (dismissing claim where plaintiff did not allege that his former employer treated him differently from the way in which it treated other former employees). Kassaye's assertions to the contrary are not substitutes for concrete evidentiary materials indicating differential treatment. August v. Offices Unlimited, Inc. ______ ________________________ 981 F.2d 576, 580 (1st Cir. 1992). The only record evidence regarding the office incident are the three memos reproduced in full supra, showing simply that Kassaye was asked to leave _____ his office a month before his contract expired in order to permit another faculty member to move in. When Kassaye refused to move, he was told he could stay until his contract ran out. The request to move had been politely phrased and was accompanied by a stated willingness to take certain steps helpful to Kassaye if moving out presented a problem. In his subsequent letter honoring Kassaye's request to stay until July 31, Bingham spoke of needing the office "badly to accommodate several moves." While Kassaye viewed the request as "unprofessional and detestable," we are unable to see that the mere making of it provided grounds for an inference of discrimination. Asking a teacher whose contract was about to expire to vacate his office a few weeks early in favor of someone who would be teaching next fall was a mere effect of the past, allegedly discriminatory, act of refusing to renew -12- appellant's employment at Bryant College. It was the latter, if anything, which provided grounds for complaint. Because the events of June 8, 1990 did not constitute an actionable violation of Title VII, there was no continuing violation extending into the 300-day limitations period. The district court correctly held that appellant's EEOC charge was not timely filed. Because we affirm the district court's dismissal of Kassaye's complaint on the limitations ground,the other issuesraised by Kassayeare moot. Affirmed. Costs to appellees. _________ ___________________ -13-